VISTA HEALTHPLAN, INC., and Ramona Sakiestewa, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BRISTOL–MYERS SQUIBB CO., and American BioScience, Inc., Defendants.

No. CIVA101CV01295EGSAK.

United States District Court, District of Columbia.

June 4, 2003.

Stipulation of Settlement between Vista Healthplan and Bristol-Myers Squibb Co., May 28, 2003.

Stipulation of Settlement between Vista Healthplan, Inc. amd American BioScience, Inc., May 27, 2003.

Richard J. Stark, Evan R. Chesler, Cravath, Swaine & Moore LLP, New York, NY, Counsel for Bristol–Myers Squibb Company.

Kevin B. Love, Michael Criden, Hanzman & Criden, P.A., Coral Gables, FL, Third–Party Payor Lead Counsel and Counsel for Vista Healthplan, Inc.

Carlton A. Varner, Esq., Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, CA, Counsel for American Bioscience, Inc.

*ORDER CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING PROPOSED SETTLEMENTS*

SULLIVAN, District Judge.

Upon review and consideration of the: (i) Stipulation of Settlement dated May 27, 2003, executed on behalf of Plaintiff Vista Healthplan, Inc., individually, and as representative of the Settlement Class (as

defined below), and Bristol–Myers Squibb Company; and (ii) Stipulation of Settlement Dated May 27, 2003, executed on behalf of Plaintiff Vista Healthplan, Inc., individually, and as representative of the Settlement Class, and American BioScience, Inc. (collectively, the "Settlement Agreements"), and having held a hearing on June 3, 2003, it is hereby ORDERED as follows:

*Preliminary Approval of Settlements and Conditional Certification of the Settlement Class*

1. The Court finds that it has jurisdiction over this Action.

2. The terms of the Settlement Agreements are preliminarily approved, subject to further consideration at the Fairness Hearing provided for below. The Court finds that the settlements reached in the Settlement Agreements are sufficiently within the range of reasonableness so that notice of the proposes settlements should be given as provided below in paragraphs 6 through 9.

3. The Court conditionally certifies the following Settlement Class ("Class"):

All "Third–Party Payors" (defined immediately below) in the United States which, at any time from January 1, 1999 through December 31, 2002, paid, in whole or in part, for Taxol and/or generic paclitaxel in the United States. Excluded from the Class are Defendants, their subsidiaries, affiliates, officers and directors, and government entities.

"Third–Party Payor" shall mean any entity that (i) is a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides coverage for the administration of Taxol or generic paclitaxel to natural persons, and (ii) is also at risk, pursuant to such contract, policy or plan, to pay or reim-

burse all or part of the costs of providing such coverage.

A self-funded health benefit plan for employees of a government entity that satisfies the definition of "Third–Party Payor" shall not be considered a "government entity."

4. The Court conditionally finds that Vista Healthplan, Inc. is an adequate class representative for the Class. If the Settlement Agreements are terminated or are not consummated for any reasons whatsoever, the certification of the Class shall be void, and the defendants shall have reserved all of their rights to oppose any and all class certification motions and to contest the adequacy of Vista Healthplan, Inc. as a representative of any putative class.

5. The Court appoints, consistent with prior orders, Hanzman & Criden, P.A., as lead counsel for the Class ("Lead Counsel").

### Notice to Potential Class Members

6. Before or on June 20, 2003 (or 17 calendar days after entry of this Order), Lead Counsel shall direct the Claims Administrator (defined below) to mail by first class mail, postage prepaid, copies of the Notice of Proposed Settlement and Settlement Hearing ("Notice"), substantially in the form attached as Exhibit 3 to Plaintiff's Motion for Preliminary Approval, to all potential members of the Class, to the extent that they can be identified by reasonable diligence.

7. Lead Counsel shall also direct the Claims Administrator to have published a Summary Notice of Proposed Settlement and Settlement Hearing ("Summary Notice"), substantially in the form attached as Exhibit 4* to Plaintiff's Motion for Preliminary Approval: (i) one day a week for two consecutive weeks in *National Underwriter: Life & Health/Financial Services Edition;* and (ii) one day a week for two consecutive weeks in the *New York Times.* Summary Notice shall be first published as soon as practicable after entry of this Order, and in all events, before June 30, 2003.

8. Prior to the Fairness Hearing, Lead Counsel shall file with the Court a sworn statement attesting to compliance with the provisions of paragraphs 6 & 7 above.

9. The notice to be provided to potential class members as set forth in paragraphs 6 & 7 above is found to be the best means of providing notice practicable under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed settlement and the Fairness Hearing to all persons affected by and/or entitled to participate in the settlements reached by the parties, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

### Claims Administration

10. Lead Counsel has designated Complete Claim Solutions as the Claims Administrator, which designation is hereby approved, to be responsible for: (i) establishing an address and toll-free phone number (to be included in the Notice and Summary Notice) to communicate with Class members; (ii) establishing a website to post the Notice, Summary Notice and Settlement Agreements and related documents; (iii) disseminating Notice to Class Members; (iv) receiving and maintaining documents sent from Class Members, including Proofs of Claim, Notices of exclusions, and other documents relating to claims administration; and (v) administrating claims for allocation of funds among Class Members consistent with the Settle-

* Editor's Note: Exhibit 4 is not included for publication.

ment Agreements, Escrow Agreements and Court Order.

11. The Escrow Agent is directed to pay the Settlement Administrator the costs of the notice ordered by the Court consistent with the Escrow Agreements entered into by the parties.

***Requests for Exclusion From the Class***

12. Any member of the Class who wishes to be excluded from the Class shall mail a written request for exclusion ("Notice of Exclusion") to the Claims Administrator, to be mailed and received no later than August 20, 2003, and clearly stating the following: the name, address, taxpayer identification number, telephone number and fax number of the entity that wishes to be excluded from the Class. The Notice of Exclusion shall include, among other things, a certification containing substantially the following language: "The undersigned hereby represents that he/she has authority to sign and submit this Notice of Exclusion on behalf of the above-named Third–Party Payor, and that information provided herein is based on company records kept in the ordinary course of business. The undersigned also certifies that he/she has not received any advice from the parties to this litigation concerning his/her or the Third–Party Payor's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.,* or other laws governing their obligations to any class member. The undersigned understands that by submitting this Notice of Exclusion, the Third–Party Payor identified above will not be entitled to receive any proceeds of the Settlements described more fully in the Notice. By signing below, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746." If the individual who signs the

Notice of Exclusion is not a duly authorized officer or director (or like employee) of the entity wishing to be excluded, then the individual must attach written evidence of the Class Member's grant of authority to the individual signing to execute the Notice of Exclusion on its behalf.

13. The entity mailing the Notice of Exclusion shall also be requested to provide information necessary to effectuate the Settlement Agreements (in particular, the Settlements' reversion and termination contingencies), and if sufficient information is not forthcoming, the entity shall be subject to discovery via subpoena or other legal process. Any information provided by any entity requesting exclusion from the Class shall be kept confidential as provided for in the Settlement Agreements.

14. Any Class Member that submits a valid and timely Notice of Exclusion shall not be bound by the Settlement Agreements, shall not be entitled to share in the benefits of the Settlements, and shall not be bound by the Final Order and Judgment, whether favorable or adverse.

15. Any potential member of the Class that does not properly and timely mail a Notice of Exclusion as set forth in paragraphs 12 through 14 shall be included in the Class, and shall be bound by all the terms and provisions of the Settlement Agreement, whether or not such potential member of the Class shall have objected to the Settlements, whether or not such potential member of the Class received actual notice, and whether or not such potential member of the Class makes a claim upon or participates in the Settlements.

***Proof of Claim***

16. The Claims Administrator shall include in the Notice sent to potential Class Members a Proof of Claim form substantially in the form attached as Exhibit 5 to the Motion for Preliminary Approval.

17. Each Class Member that wishes to receive a distribution from the Settlement Fund must mail a properly executed and complete Proof of Claim to the Claims Administrator at the address indicated in the Notice or Summary Notice, to be received and mailed on or before August 20, 2003.

18. Any Class Member who submits a Proof of Claim shall provide the Claims Administrator any requested information or documents to verify information appearing in the Proof of Claim.

19. The Allocation and Distribution Plan (defined in the Settlement Agreements) is hereby preliminary approved. The Preferential Fund shall be $1,530,000. Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, which shall make a recommendation to the Court, as to the extent, if any, to which each claim should be allowed.

20. The Settlement Administrator will notify each Class Member that filed a Proof of Claim of any recommendation of disallowance, in whole or in part, of the Proof of Claim submitted by such Class Member and will set forth the reasons for any such disallowance. Class Members shall be permitted a reasonable period of time to cure any deficiency with respect to their respective Proof of Claim. A copy of such notification shall also be sent by the Claims Administrator to the Lead Counsel.

21. Any Class Member that does not submit a timely and complete Proof of Claim, or submits a Proof of Claim that is disallowed, shall be barred from participating in the Settlement but otherwise shall be bound by all of the terms and provisions of the Settlement Agreements.

22. Each Class Member that submits a Proof of Claim shall expressly submit to the jurisdiction of the Court with respect to the claims submitted and shall (subject to final approval of the Settlement) be bound by all the terms and provisions of the Settlement Agreement.

### *Confidentiality*

23. Any information received by the Settlement Administrator in connection with the Settlements that pertains to a particular Class Member shall be kept confidential and shall not be disclosed to any other person or entity other than counsel for the parties and the Court.

### *Fairness Hearing*

24. A Fairness Hearing shall be held on October 22, 2003 at 11:00 a.m. in Courtroom 1 before the undersigned to consider: (i) the fairness, reasonableness and adequacy of the Settlements; (ii) Class Counsel's motion for attorney's fees and expenses and application for incentive award; and (iii) whether to finally approve the proposed Allocation and Distribution Plan.

25. At least seven days prior to the date of the Fairness Hearing, Lead Counsel shall file its motion for final approval and its motion for attorney's fees and expenses and application for incentive award.

26. Any Class Member who wishes to comment in support of, or in opposition to, the fairness, reasonableness and adequacy of the Settlements or Class Counsel's motion for attorney's fees and expenses and application for incentive award must serve their comments and/or objections in writing, by mail, postage prepaid, to Lead Counsel and Counsel for both Bristol and ABI, received no later than September 22, 2003, giving the Class Member's full name and address.

27. Any Class Member that has not filed a Notice of Exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the

Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlements or Class Counsel's motion for attorney's fees and expenses and application for incentive award; provided, however, that no person shall be heard in opposition to the fairness, reasonableness and adequacy of the Settlements or Class Counsel's motion for attorney's fees and expenses and application for incentive award, and no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court, unless on or before September 22, 2003, such person: (a) files with the Clerk of the Court a notice of such person's intention to appear along with a statement (including any supporting documentation) that indicates the basis for such person's opposition to the fairness, reasonableness and adequacy of the Settlements or Class Counsel's motion for attorney's fees and expenses and application for incentive award; and (b) serves copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, upon Lead Counsel and counsel for both Bristol and ABI.

28. The date and time of the Fairness Hearing shall be set forth in the Notice and Summary Notice, but shall be subject to adjournment by the Court without further notice to the members of the Class other than that which may be posted at the Court and on the Court's website.

### Other Provisions

29. Terms used in this Order that are defined in the Settlements Agreements, unless otherwise defined in this Order, are used in this Order as defined in the Settlement Agreements.

1. Capitalized terms, unless otherwise noted, are defined below in Section I of this Settle-

30. In the event the Settlements are terminated in accordance with the provisions of the Settlements Agreements, the Settlements and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreements, and without prejudice to the *status quo ante* rights of the Plaintiff and the Class, Bristol and ABI.

31. If the Settlements are terminated or ultimately not approved, the Court will modify any existing scheduling order to ensure that the parties will have sufficient time to prepare for the resumption of litigation.

### STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Settlement Agreement") is made and entered into as of this 28 day of MAY, 2003, between Vista Healthplan, Inc. ("Vista"), one of the named plaintiffs in the above-styled action, individually and as representative of the proposed Third–Party Payor Class [1], and Bristol–Myers Squibb Company ("Bristol"), one of the named Defendants in this action.

WHEREAS, Vista commenced this action on June 11, 2001, against Bristol and American BioScience, Inc. ("ABI"), alleging that Defendants delayed the entry of generic paclitaxel from coming to market thereby causing indirect purchasers to pay supra-competitive prices for Taxol and generic paclitaxel;

WHEREAS, Vista's Complaint asserted violations of federal antitrust law, state antitrust and/or unfair business competition statutes and state common law;

ment Agreement.

WHEREAS, Bristol denies that it has committed any violation of law or engaged in any wrongdoing, denies any and all liability to Vista and the Class, and has asserted a number of defenses to Vista's claims;

WHEREAS, since the filing of this Action, Vista and Class Counsel have engaged in an extensive investigation relating to the claims and underlying events alleged in the Complaint. Among other things, Class Counsel have: (1) reviewed and analyzed thousands of documents produced by Bristol, ABI and third parties; (2) engaged in legal research and analysis of a myriad of issues relating to certification, liability, causation and damages; (3) briefed substantive motions on liability and certification; and (4) retained and consulted with economists and other experts with respect to causation and damages allegedly sustained by the Class as a result of the wrongful conduct alleged in the Complaint. Class Counsel are therefore thoroughly familiar with issues of certification, liability, causation and damages with respect to the claims asserted in the Complaint and defenses asserted in Bristol's Answer;

WHEREAS, Class Counsel have engaged in extensive discovery, thoroughly investigated the facts of this Action, considered Bristol's defenses, and reviewed the pertinent statutory and case law on liability and class certification, Class Counsel have concluded that it would be in the best interests of the Class to enter into this Settlement Agreement with Bristol because the Settlement would be a fair, reasonable and adequate resolution of this Action;

WHEREAS, Bristol, while continuing to deny vigorously Vista's allegations and any liability with respect to any and all claims asserted in the Complaint, nevertheless recognizes the costs and uncertainties attendant upon further litigation of the claims in this Action, and has therefore concluded that it is desirable to enter into this Settlement Agreement to avoid further expense;

WHEREAS, Bristol recognizes that any separately represented third-party payors intending to exclude themselves from this Settlement will benefit from the efforts of Class Counsel, and have therefore established certain discounts defined below to reflect this reality;

WHEREAS, Plaintiff Ramona Sakiestewa and Class Counsel have represented consumers in all fifty states since filing this Action; whereas they have agreed with plaintiffs' counsel in *State v. Ohio, et al. v. Bristol–Myers Squibb Co.*, Case No. 1:02CV01080 (EGS) (D.D.C.) ("States Action"), that any settlement in the States Action shall resolve, settle and satisfy all consumer claims asserted against Bristol in this Action;

WHEREAS, it is the intention of the Settling Parties that this Settlement resolve, compromise and settle all claims of the Class against Bristol as more particularly provided below;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Settling Parties, through their undersigned counsel, subject to Court approval pursuant to Fed.R.Civ.P. 23(e), to all of the terms and conditions set forth herein, as follows:

## I. *DEFINITIONS*

As used in this Settlement Agreement, the following terms shall have the following meanings:

A. "Action" shall mean *Vista Healthplan, Inc. et al. v. Bristol–Myers Squibb Co. and American BioScience, Inc.*, Case No. 1:01CV01295 (EGS) (D.D.C.).

B. "Allocation and Distribution Plan" shall mean, subject to Court approval, the following: The Settling Parties agree that the "Net Settlement Fund" shall be allocated and distributed as follows:

(1) All Class Members' timely and valid claims shall be valued as follows: The sum of all Taxol Payments multiplied by seventeen percent (17%). This amount shall be referred to as the Class Member's "Recognized Loss."

(2) To satisfy the Recognized Loss of Non–J–Code Class Members, one million and five hundred thousand dollars ($1.5 million) of the Net Settlement Fund (or other amount approved by the Court) shall be set aside as the Preferential Fund.

(3) The Recognized Loss of Non–J–Code Class Members and J–Code Class Members shall be paid out of the Net Settlement Fund as follows:

(a) The Recognized Loss of Non–J–Code Class Members shall first be paid out of the Preferential Fund on a pro-rata basis;

(b) To the extent that the Recognized Loss of Non–J–Code Class Members is not one hundred percent (100%) satisfied from the Preferential Fund, the unsatisfied amounts of the Recognized Loss of the Non–J–Code Class Members will be paid from the Non–Preferential Fund *together* with the Recognized Loss of J–Code Class Members on a pro-rata basis.

(c) If the Recognized Loss of Non–J–Code Class Members is one hundred percent (100%) satisfied from the Preferential Fund, and there remains money in the Preferential Fund, the remaining money will be added to the Non–Preferential Fund for payment of J–Code Class Members' Recognized Loss on a pro-rata basis.

(d) To the extent that a Class Member used more than one reimbursement or payment system during the Class Period; and further, has valid claims as a Non–J–Code Class Member for only part of the Class Period, that Class Member's claims shall be allocated as follows: (1) the Class Member shall disclose, if applicable, the date when the Class Member switched to or from using a reimbursement or payment system based on a J–Code Medicare Fee Schedule (or any similar reimbursement or payment system), together with any other information relevant to determining the proportion of its Taxol Payments that were made under a Non–J–Code reimbursement or payment system (or similar system); (2) based on the date and other information disclosed, the Claims Administrator shall calculate the Class Member's actual breakdown of Taxol Payments or, if applicable, calculate the percentage of the Class Period that the Class Member was a Non–J–Code Class Member; and (3) the Class Member will be treated as both a J–Code Class Member and a Non–J–Code Class Member for purposes of Paragraph I.B.(3)(a)-(c) hereof, according to its actual breakdown of Taxol Payments or percentage determined in subsection (2) above, if applicable. For illustration purposes only of calculating the above-mentioned percentage, if a Class Member has a $1,000,000 Recognized Loss, was a J–Code Class Member from January 1, 1999 though December 31, 2001 and a Non–J–Code Class Member for the rest of the Claim

Period, then the Claims Administrator would calculate that the Class Member was a J–Code Class Member for 75% of the Class Period, and would deem that Class Member to have a $750,000 Recognized Loss as a J–Code Class Member and a $250,000 Recognized Loss as a Non–J–Code Class Member.

C. "Bristol" shall mean defendant Bristol–Myers Squibb Company.

D. Subject to the Court's approval and for the purposes of this Settlement Agreement only, the undersigned agree and consent to the certification of the following Third–Party Payor Class [hereinafter "Third–Party Payor Class" or "Class"]:

All "Third–Party Payors" (defined immediately below) in the United States which, at any time from January 1, 1999 through December 31, 2002, paid, in whole or in part, for Taxol and/or generic paclitaxel in the United States. Excluded from the Class are Defendants, their subsidiaries, affiliates, officers and directors, and government entities.

"Third–Party Payor" shall mean any entity that (i) is a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides coverage for the administration of Taxol or generic paclitaxel to natural persons, and (ii) is also at risk, pursuant to such contract, policy or plan, to pay or reimburse all or part of the costs of providing such coverage.

A self-funded health benefit plan for employees of a government entity that satisfies the definition of "Third–Party Payor" shall not be considered a "government entity."

E. "Class Counsel" shall mean all counsel representing Vista and the Class in this Action and all counsel representing Third–Party Payor Class Representatives in the Related Actions.

F. "Class Period" shall mean January 1, 1999 through December 31, 2002.

G. "Claim Documentation," with respect to the LDR Group, RK Group and MB Group, if applicable, shall mean the following:

(1) computer reports provided by each member of the LDR Group ("LDR Member"), RK Group ("RK Member") and MB Group ("MB Member") summarizing the Taxol Payments for that LDR, RK or MB Member (including purchases on behalf of itself and any and all self-funded plans, PBMs and/or any other plans administered by the LDR, RK or MB Member) during the Class Period; such reports need contain only the aggregate amount of Taxol Payment for each year during the Class Period; and

(2) a declaration (the form for which is attached hereto as Exhibit A) made by an authorized representative of each member of the LDR, RK or MB Group, certifying:

(a) the representative's authority to submit a claim on behalf of the LDR, RK or MB Member;

(b) the LDR, RK or MB Member's authority to settle the claims asserted in this Action as to all of its Taxol Payments and to release all claims related to such payments on behalf of itself and any and all self-funded plans, PBMs and/or any other plans administered by the Member;

(c) the total dollar amount of the Taxol Payments claimed by the LDR, RK or MB Member (including amounts claimed on behalf of self-funded plans, PBMs and/or any other plans administered by the Settling Health Plan);

(d) the identity of each entity on whose behalf the LDR, RK or MB Member is authorized to act (including self-funded plans, PBMs and/or any other plans administered by the Settling Health Plan) by name and by the Federal Employer Identification Number assigned to such entity by the United States Internal Revenue Service (provided however that no LDR, RK or MB Member shall be required to provide more identifying information in its declaration than other Third–Party Payor Class Members are required to provide in the class Third–Party Payor Proof of Claim Form);

(e) that the LDR, RK or MB Member and each entity on whose behalf the Member is authorized to act (including self-funded plans, PBMs and/or any other plans administered by the Settling Health Plan) waive any right they may have to exclude themselves from any class action settlement involving any of the claims asserted in this Action;

(f) that the LDR, RK or MB Member and each entity on whose behalf the Member is authorized to act (including self-funded plans, PBMs and/or any other plans administered by the Settling Health Plan) waive any right they may have to receive any distribution from any class action settlement involving any of the claims asserted in this Action; and

(g) that the LDR, RK or MB Member has been represented, since no later than the date of its declaration, by Lowey Dannenberg Bemporad & Selinger, P.C., Miner, Barnhill & Galland, P.C., Rawlings & Associates, P.L.L.C. or Robins, Kaplan, Miller & Ciresi LLP, for claims arising from its Taxol Payments.

(3) Any LDR, RK or MB Member may submit Claim Documentation on behalf of other Members that are subsidiaries, divisions or affiliates of the submitting Member, or on whose behalf the submitting Member acts as a Third Party Administrator. Self-funded health benefit plans for employees of governmental entities may properly be included in the Claim Documentation of any LDR, RK or MB Member. No LDR, RK or MB Member will be required to submit any more information or documentation than will be required from a Class Member who files a Proof of Claim.

H. "Defendants" shall mean Bristol and ABI.

I. "Direct Action" shall mean *Oncology & Radiation Assocs., P.A. v. Bristol–Myers Squibb Co. and American Bioscience, Inc.,* Case No. 1:01CV02313 (EGS) (D.D.C.).

J. "J–Code Class Member" shall mean any member of the Class that utilized a reimbursement or payment system for Taxol Payments during all or part of the Class Period that employed, or was based upon, a J–Code Medicare Fee Schedule (or any similar reimbursement or payment system). Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan.

K. "J–Code Medicare Fee Schedule" shall mean a fee schedule used by or authored by the Health Care Financing Administration, Centers for Medicare & Medicaid Services, and/or Medicare that employed a Code of "J9265" to represent Taxol or generic paclitaxel and listed fees

for J9265 that did not change during the Class Period.

L. "LDR Group" shall mean the following third-party payors: Aetna U.S. Healthcare, Arkansas Blue Cross and Blue Shield, Blue Cross Blue Shield of Arizona, Blue Cross Blue Shield of Georgia, Blue Cross Blue Shield of Kansas City, Blue Cross Blue Shield of Mississippi, Blue Cross Blue Shield of Missouri, Blue Cross Blue Shield of North Carolina, Blue Cross Blue Shield of Rhode Island, Blue Cross Blue Shield of Vermont, Blue Cross of California, Blue Cross of Idaho Health Service, BlueCross BlueShield Association FEP, Capital Blue Cross, Central Benefits Mutual Insurance Company, CIGNA, Conseco Companies, Eastern States Health and Welfare Fund, Federated Mutual, Fortis Ins. Co., GE Financial Assurance, Golden Rule Ins. Co., Government Employees Hospital Assoc., Great–West Life & Annuity Ins. Co., Group Health Cooperative, Health Insurance Plan of Greater New York, Health Net, Health Partners, Inc., Health Plan of the Redwoods, Health-Now New York, Inc., Highmark, Inc., Independence Blue Cross, Louisiana Health Service Indemnity Co. (d/b/a BlueCross/BlueShield of Louisiana), Mail Handlers Benefit Plan, Medical Benefits Mutual Life Ins. Co., Medical Mutual of Ohio, Mid–Atlantic Medical Services Inc., Mountain States Blue Cross Blue Shield, MVP Health Plan, National Health Ins. Co., Nationwide Insurance Co. (d/b/a Calfarm Ins.), Noridian Mutual Insurance Company, Oxford Health Plan, Pacific Life Insurance Company, PacifiCare Health Systems, Principal Life Ins. Co., Priority Health, Inc., The Wellness Plan, Tufts Associated Health Plans, Inc., Unicare Life & Health Ins. Co., UnitedHealthcare, Verizon Communications, Wellpoint, Wisconsin Physicians Service Ins. Corp., and any other entity that is represented by the law firm of Lowey Dannenberg Bemporad & Selinger, P.C. or Rawlings & Associates as of the date this Settlement Agreement is first executed.

M. "LDR Group Taxol Payment Percentage" shall mean the sum of all Taxol Payments of all the members of the LDR Group (on their own behalf and on behalf of entities as to which they have authority to settle the claims asserted in this Action) which have filed complete Claim Documentation, as a percentage of the TPP Total Aggregate Taxol Payments. Provided, however, that under no circumstances shall the LDR Group Taxol Payment Percentage exceed thirty-five percent (35%), and under no circumstances will the sum of the LDR Group Taxol Payment Percentage, the RK Group Taxol Payment Percentage and the MB Group Taxol Payment Percentage exceed fifty-five percent (55%).

N. "LDR Group Discount" shall mean the amount equal to the Settlement Fund less the amount of the Preferential Fund, times the LDR Group Taxol Payment Percentage, times twenty percent (20%).

O. "LDR Group Reversion Amount" shall mean the amount equal to the Settlement Fund less the amount of the Preferential Fund, times the LDR Group Taxol Payment Percentage, times eighty percent (80%).

P. "MB Group" shall mean the following third-party payors: American Medical Security Inc., American Medical Securities Group, Inc., Cobalt Corp., Dean HMO, WEA Insurance Corporation, Wisconsin Masons Health Care Fund and any other entity that is represented by the law firm of Miner, Barnhill & Galland, P.C. as of the date this Settlement Agreement is first executed.

Q. "MB Group Taxol Payment Percentage" shall mean the sum of all Taxol Payments of all the members of the MB Group (on their own behalf and on behalf

of entities as to which they have authority to settle the claims asserted in this Action) which have filed complete Claim Documentation, as a percentage of the TPP Total Aggregate Taxol Payments. Provided, however, that under no circumstances shall the MB Group Taxol Payment Percentage exceed five percent (5%), and under no circumstances will the sum of the LDR Group Taxol Payment Percentage, the RK Group Taxol Payment Percentage and the MB Group Taxol Payment Percentage exceed fifty-five percent (55%).

R. "MB Group Discount" shall mean the amount equal to the Settlement Fund less the amount of the Preferential Fund, times the MB Group Taxol Payment Percentage, times twenty percent (20%).

S. "MB Group Reversion Amount" shall mean the amount equal to the Settlement Fund less the amount of the Preferential Fund, times the MB Group Taxol Payment Percentage, times eighty percent (80%).

T. "Net Settlement Fund" shall mean the amount of the Settlement Fund to be distributed to members of the Class (the amount of money referred to in Paragraph III.B.2.(b).(vii)).

U. "Non–J–Code Class Members" shall mean those members of the Class which are not J–Code Class Members. Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system at the same time during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan.

V. "Non–Preferential Fund" shall mean a fund, which the Court shall set aside to satisfy the claims of J–Code Class Members, in accordance with the Allocation and Distribution Plan, equal to the Net Settlement Fund less the amount of money approved by the Court to be included in the Preferential Fund.

W. "Preferential Fund" shall mean one million and five hundred thousand dollars ($1.5 million) or other amount that is set aside by the Court from the Settlement Fund to satisfy the claims of Non–J–Code Class Members, in accordance with the Allocation and Distribution Plan.

X. "Releasees" shall mean Bristol and its present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and their respective present and former officers, directors, employees, managers, agents, attorneys and legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee. Without further defining the term "releasee," the parties declare that ABI shall not be considered a releasee.

Y. "Releasors" shall mean each Third–Party Payor Class Member on its own behalf and on behalf of, and including, its respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, their respective present and former officers, directors, employees, managers, agents, attorneys and legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

Z. "RK Group" shall mean: Anthem, Inc., Anthem Insurance Companies, Inc., Anthem East, Inc., Anthem Health Plans, Inc., Anthem Health Plans of Maine, Inc., Machigonne, Inc., Anthem Health Plans of New Hampshire, Inc., Anthem Health &

Life Insurance Company of New York, Anthem West, Inc. and its divisions Rocky Mountain Hospital and Medical Service, Inc., and HMO Colorado, Inc., Anthem Midwest, Inc., Community Insurance Co., Anthem Benefit Administrators, Inc., Anthem Health Plans of Kentucky, Inc., Anthem Southeast, Inc., Trigon Insurance Company, Healthkeepers, Inc., Priority Health Care, Inc., Peninsula Health Care, Inc., Louisiana Health Service & Indemnity Company, HMO Louisiana, Inc., Blue Cross Blue Shield of Massachusetts, Blue Cross Blue Shield of Michigan, Blue Care Network, Inc., Blue Cross Blue Shield of Minnesota, Aware Integrated, Inc., Comprehensive Care Services, Inc., First Plan of Minnesota, Atrium Health Plan, Inc., HMO Minnesota, Blue Cross and Blue Shield of Nebraska, Corporate Diversified Services, Inc., Group Health Service of Oklahoma, Inc., Group Health Maintenance Organization, Inc., Bluelincs HMO, BlueCross BlueShield of Tennessee, Tennessee Health Care Network, Inc., Volunteer State Health Plan, Inc., California Physicians' Service, CareAmerica Life Insurance Company, CPIC Life Insurance Company, Carefirst, Inc., Carefirst of Maryland, Inc., Willse & Associates, Inc., CFS Health Group, Inc., Delmarva Health Plan, Inc., Free State Health Plan, Inc., Patuxent Medical Group, Inc., Group Hospitalization and Medical Services, Inc., Capital Care, Inc., Capital Area Services, Inc., Blue Cross Blue Shield of Delaware, Inc., Excellus Health Plan, Inc., Excellus Benefit Services, Inc., Health Care Service Corporation, Horizon Health Care Services, Inc., Horizon Healthcare of New Jersey, Inc., Horizon Healthcare of New York, Inc., Horizon Healthcare Insurance Company of New York, Horizon Healthcare Administrators, The Regence Group, Regence BlueCross BlueShield of Oregon, Regence BlueCross BlueShield of Utah, Regence BlueShield, Regence BlueShield

of Idaho, Wellchoice, Inc., Empire Healthchoice Assurance, Inc., Empire Healthchoice HMO, Inc., Wellchoice Insurance of New Jersey, Inc., Wellmark, Inc., Wellmark Community Insurance, Inc., Wellmark Health Plan of Iowa, Inc., Wellmark of South Dakota, Inc., Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., Hawaii Medical Service Association (d/b/a Blue Cross Blue Shield of Hawaii), Humana, Inc., Trigon Blue Cross Blue Shield, Blue Cross and Blue Shield of Louisiana, HMO Nebraska, Blue Cross Blue Shield of Oklahoma, Blue Shield of California, Horizon Blue Cross Blue Shield of New Jersey, Empire Blue Cross and Blue Shield, Empire Blue Cross, Empire Blue Cross and Blue Shield HMO, Empire Blue Cross HMO, Wellmark Blue Cross and Blue Shield of Iowa, Wellmark Blue Cross and Blue Shield of South Dakota, Wellchoice HMO of New Jersey, The Guardian Life Insurance Company of America and Mutual of Omaha Insurance Company, and any other entity represented by Robins, Kaplan, Miller & Ciresi LLP as of the date this Settlement Agreement is first executed.

AA. "RK Group Taxol Payment Percentage" shall mean the sum of all Taxol Payments of all the members of the RK Group (on their own behalf and on behalf of entities as to which they have authority to settle the claims asserted in this Action) which have filed complete Claim Documentation, as a percentage of the TPP Total Aggregate Taxol Payments. Provided, however, that under no circumstances shall the RK Group Taxol Payment Percentage exceed twenty percent (20%), and under no circumstances will the sum of the LDR Group Taxol Payment Percentage, the RK Group Taxol Payment Percentage and the MB Group Taxol Payment Percentage exceed fifty-five percent (55%).

BB. "RK Group Discount" shall mean the amount equal to the Settlement Fund less the amount of the Preferential Fund, times the RK Group Taxol Payment Percentage, times twenty percent (20%).

CC. "RK Group Reversion Amount" shall mean the amount equal to the Settlement Fund less the amount of the Preferential Fund, times the RK Group Taxol Payment Percentage, times eighty percent (80%).

DD. "Settlement Fund" or "Settlement Amount" shall mean the sum of fifteen million dollars ($15,000,000) that Bristol will pay into the Escrow Account, plus all accrued income and interest.

EE. "Settling Parties" shall mean Vista and Bristol.

FF. "Third–Party Payor" shall mean any entity that (i) is a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides coverage for the purchase or administration of Taxol or generic paclitaxel to natural persons, and (ii) is also at risk, pursuant to such contract, policy or plan, to pay or reimburse all or part of the costs of providing such coverage.

GG. "Third–Party Payor Class Member" or "Class Member" shall mean any entity falling within the definition of the Class which has not timely and validly excluded itself from the Class in accordance with the procedure to be established by the Court.

HH. "Third–Party Payor Settlement Fund Escrow Account" shall mean the escrow account set up at Gibraltar Bank, FSB, or another financial institution that the Settling Parties mutually agree upon, by virtue of the escrow agreement entered into by the Settling Parties.

II. "Taxol Payments" shall mean the dollar amount of purchases of the brand name prescription drug Taxol and generic paclitaxel, less any reimbursements, rebates or discounts, during the Class Period. For the purposes of this Settlement Agreement, a Third–Party Payor "purchases" Taxol or generic paclitaxel if they paid or reimbursed some or all of the purchase price.

JJ. "TPP Total Aggregate Taxol Payments" shall mean the sum of all Taxol Payments reported on all timely and validly filed Claim Documentation, timely and validly filed proof of claims, notices of exclusion that result in a reversion to Bristol (as detailed below) (or reasonable estimates of the foregoing if necessary) and any estimates or determinations by counsel or the Court of Taxol Payments required under this Settlement Agreement of members of the LDR and RK Groups.

KK. "Related Actions" shall mean: (i) *Plumbers & Pipefitters Local 572 Health & Welfare Fund, et al. v. Bristol–Myers Squibb Company*, Case No. 00–C–2525, pending in the Circuit Court for the State of Tennessee, Twentieth Judicial District; (ii) *Dzierlatka v. Bristol–Myers Squibb Co. and American Bioscience, Inc.*, Case No. BC276039, pending in the Superior Court of the State of California, County of Los Angeles, Central Judicial District; and (iii) *Donnelly v. Bristol–Myers Squibb Company*, Case No. 01–CV–3785, pending in the District Court of Johnson County, Kansas.

LL. "Third–Party Payor Lead Counsel" or "Lead Counsel" shall mean the law firm of Hanzman & Criden, P.A.

MM. "Third–Party Payor Opt Out" shall mean any Third–Party Payor falling within the definition of the Class that has timely and validly excluded itself from the Class in accordance with the procedures to be established by the Court. If necessary to effectuate any part of this Settlement Agreement, the Settling Parties agree to use any and all reasonable means (includ-

ing issuing subpoenas) to calculate the Taxol Payments for, and gather any other pertinent information related to, for each Third–Party Payor Opt Out.

NN. "Third–Party Payor Class Representatives" shall mean the named plaintiffs in this Action and the Related Actions.

OO. "United States" shall mean the United States of America and its territories and possessions.

## II. SETTLEMENT FUND

### A. Settlement Consideration

Subject to the provisions hereof, and in full, complete, and final settlement of this Action as provided herein, Bristol agrees to pay by wire transfer fifteen million dollars ($15,000,000) into the Third–Party Payor Settlement Fund Escrow Account ("Escrow Account") within five (5) business days after the Settling Parties hereto execute this Settlement Agreement. The Escrow Account shall be established and administered pursuant to an escrow agreement in a form satisfactory to the parties hereto. The Settlement Fund may be invested at the direction of Lead Counsel in United States Treasury Bills, United States Treasury Notes, or other instruments insured or guaranteed by the full faith and credit of the United States (or other instruments, accounts or funds permitted by the escrow agreement), and any interest or income earned thereon shall become part of the Settlement Fund.

### B. Qualified Settlement Fund

The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B–1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsis-

tent with such treatment. Whether or not Final Approval of this settlement has occurred, and whether or not the Escrow Account qualifies as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B–1, Lead Counsel shall cause to be paid from the Escrow Account any taxes or estimated taxes due on any income earned on the funds in the Escrow Account and all related costs, expenses and penalties, including any tax liabilities or penalties imposed on Bristol with respect to such income. Third–Party Payor Class Members shall have no recourse against Bristol for such amounts paid out of the Settlement Fund. If amounts received by the Third–Party Payor Class Members, or any portion thereof, are construed to be income, it is their sole responsibility to pay taxes on the amount construed to be income, plus any penalties or interest, and Bristol shall have no liability for such taxes, penalties or interest.

### C. All Claims Satisfied by Settlement Fund

Each Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by Third–Party Payor Class Members pursuant to this Settlement Agreement. Except as provided by order of the Court pursuant to this Settlement Agreement, no Third–Party Payor Class Member shall have any interest in the Settlement Fund or any portion thereof.

### D. Production to Third Parties

Vista and Class Counsel shall not voluntarily provide work product, expert or consultant analyses, IMS data, or any other documents related to this Action to any Third–Party Payor Opt Out or to any other person, and shall prohibit, to the extent permissible, any experts previously re-

tained by Class Counsel in connection with this Action from accepting an engagement in any action based on the same subject matter of this Action.

### E. *Dismissal of Related Actions*

Upon Final Approval (as defined in Paragraph IV.D.), Lead Counsel shall use all reasonable means to seek dismissal with prejudice of all Related Actions with all parties in those actions responsible for their own fees and costs associated with those actions, without prejudice of the plaintiffs in those actions participating in the settlements reached in this Action or the States Action.

### F. *Dismissal of Ramona Sakiestewa's Claims Without Prejudice*

Upon Final Approval (as defined in Paragraph IV.D.), the parties agree and stipulate pursuant to Rule 41(a)(1) that Plaintiff Ramona Sakiestewa shall dismiss all of her claims in the Action without prejudice to her participating in the settlement reached in the States Action.

## III. *DISTRIBUTION OF THE SETTLEMENT FUND*

### A. *Third–Party Payor Reversions and Separately Represented Third–Party Payor Discounts*

#### 1. *Settlement Agreement Between Bristol and LDR Group or RK Group*

If Bristol reaches a settlement agreement with members of the LDR Group, the RK Group or MB Group on or before June 30, 2003, Bristol shall be entitled to submit Claim Documentation to Lead Counsel on or before August 4, 2003, as to such members of such Groups and receive applicable reversion payments from the Settlement Fund as outlined below in Paragraph III.A.2. for each member that

has submitted complete Claim Documentation.

#### 2. *Dispute Resolution Regarding Claim Documentation*

(a) *Deadline* On or before September 15, 2003, Lead Counsel shall raise any questions or disputes they may have with respect to any LDR, RK or MB Member's Claim Documentation by notifying Bristol's counsel of the nature of the dispute in writing. In addition, based on the information gathered by Bristol and Class Counsel, the parties shall negotiate in good faith to determine the amount of the LDR, RK and/or MB Group Reversion Amounts by September 15, 2003.

(b) *Procedure* If Bristol and Lead Counsel are unable to reach a negotiated resolution of the issues by September 15, 2003, the issue shall be submitted to Hon. Emmet G. Sullivan, U.S. District Court for the District of Columbia, for a determination of the LDR, RK and/or MB Group Reversion Amounts on or before September 22, 2003, and shall request that the Court resolve all matters by October 3, 2003. The Court's determination of such disputes shall be final and all parties waive any right to appeal.

(c) *Payments of Reversion Amounts* Within five (5) business days after either the parties agree to, or the Court issues an order determining, the LDR, RK and/or MB Group Reversion Amounts, Lead Counsel shall cause the Escrow Agent to pay those reversion amounts to Bristol from the Settlement Fund, provided that such payments shall not be required to be made before September 22, 2003.

#### 3. *No Settlement Agreement Between Bristol and LDR, RK or MB Group*

In the event that Bristol does not reach a Settlement with members of the LDR

Group, RK Group or MB Group, and those members timely and validly exclude themselves from the Class:

(a) Bristol shall be entitled to submit Claim Documentation by August 4, 2003, as to such members of the LDR, RK or MB Group and receive reversion payments from the Settlement Fund pursuant to the procedures set out in Paragraph III.A.2.

(b) If Bristol does not submit Claim Documentation under Paragraph III.A.3.(a), a reversion amount resulting from the exclusion of such LDR, RK or MB Group Members shall be determined that is reasonable and rationally related to the amount that would have been arrived at if the formula for the LDR, RK or MB Reversion Amounts had been applied, in the light of the available evidence and the circumstances. Bristol shall, in good faith, make all reasonable efforts (including the issuance of subpoenas) to obtain the Claim Documentation for such members. Bristol and Lead Counsel shall negotiate in good faith to determine the amount of such reversion(s). If the parties are unable to reach a negotiated resolution by September 15, 2003, they shall submit any unresolved issues to Hon. Emmet G. Sullivan, U.S. District Court for the District of Columbia, for determination of a reasonable reversion amount(s), on or before September 22, 2003, and shall request that the Court resolve such matters by October 3, 2003. The Court's resolution of such matters shall be final and all parties waive any right to appeal.

4. *Effect of Failure of an LDR, RK or MB Member to Submit Class Documentation*

Any LDR Member or RK Member that fails timely to submit complete Claim Doc-

umentation after having reached a settlement with Bristol shall waive its right to participate in the claims procedure provided by the agreement reached with Bristol, but would not waive any right it may have to file a claim as a Class Member pursuant to this Settlement Agreement.

5. *Confidentiality*

All Claim Documentation or any other like information submitted by LDR Members, RK Members or any other Third-Party Payor shall be kept confidential to the extent permitted by law and may be used or disclosed only for the purpose of effectuating this Settlement Agreement. Adequate steps shall be taken to protect against unlawful disclosure of confidential patient identification information, if any is included in such claim documentation.

B. *Disbursements and Distributions from the Settlement Fund*

1. *Court Approval*

Court approval shall be required prior to any disbursement or any distribution from the Settlement Fund, other than a LDR, RK or MB Group Reversion Amount, taxes on the Settlement Fund, and the costs of administering the Settlement Fund.

2. *Disbursements and Distributions*

The Settlement Fund shall be distributed as follows or as otherwise ordered by the Court:

(a) Prior to this Settlement Agreement becoming final pursuant to Paragraph IV.D. below:

(i) disbursements for the costs of administration of the Settlement Fund may be made by the Escrow Agent with notice to Lead Counsel and Bristol;

(ii) disbursements for the payment or reimbursement of any taxes (including any estimated taxes, interest or penalties) due or imposed, as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to Lead Counsel and Bristol; and

(iii) disbursements for the expense of Class notice may be made at the direction of Lead Counsel pursuant to the settlement documentation and Court order with notice of such disbursements provided to Bristol.

(b) If this Settlement Agreement becomes final pursuant to the provisions of Paragraph IV.D. below, the Settlement Fund shall be distributed as follows:

(i) first, disbursements for the costs of administration of the Settlement Fund may be made by the Escrow Agent with notice of such disbursements provided to Lead Counsel;

(ii) second, disbursements for the payment or reimbursement of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to Lead Counsel;

(iii) third, any incentive award determined by the Court for services rendered to the Class by the Third–Party Payor Class Representatives shall be distributed to the Third–Party Class Representatives;

(iv) fourth, reasonable litigation and settlement expenses incurred by the settlement administrator and any other third-parties, as determined by the Court, shall be distributed to the settlement administrator and such other third-parties;

(v) fifth, any attorney fee awarded by the Court to Class Counsel pursuant to Paragraph V.A. below, together with reasonable out-of-pocket expenditures by Class Counsel as determined by the Court, shall be paid to Lead Counsel for distribution to Class Counsel at its sole discretion;

(vi) sixth, disbursements for the expense of Class notice may be made at the direction of Lead Counsel pursuant to the settlement documentation and Court order; and

(vii) seventh, the remaining amount of the Settlement Fund shall be distributed to members of the Class.

(c) In the event that the Settlement Agreement does not receive Preliminary or Final Approval, is terminated, becomes null and void for any reason or does not become final pursuant to Paragraph IV.D. below (a "Terminating Event"), the Escrow Agent shall upon the expiration of ten (10) days, subject only to the expiration of any time deposit investment(s) not to exceed ninety days, following receipt by the Escrow Agent and Lead Counsel of written notice signed by counsel for Bristol stating that the Settlement Agreement has been subject to a Terminating Event and without order of the Court, return the Settlement Fund including interest and income earned, less (i) the notice costs incurred up to the date of return and (ii) any fees and/or expenses incurred in maintaining the Escrow Account, including taxes and fees pursuant to the Escrow Agreement, to Bristol.

(d) Upon receipt by the Escrow Agent of written notice from Lead Counsel

stating that Bristol has invoked the provisions of Paragraph III.A. of this Settlement Agreement, which permits Bristol under certain conditions a reversion of a portion of the Settlement Fund, the Escrow Agent shall within five (5) business days and without order of the Court distribute to Bristol the amount set forth in such notice.

(e) Bristol and its counsel shall have no liability or responsibility whatsoever with respect to disbursements or distributions from, or administration of, the Settlement Fund.

## IV. APPROVAL AND NOTICE

### A. Motion for Preliminary Approval

As soon as possible and in no event later than ten (10) business days after execution of this Settlement Agreement, Class Counsel shall submit to the Court a motion for preliminary approval of the settlement set forth in this Settlement Agreement.

### B. Notice to End–Payor Class

In the event that the Court preliminarily approves the settlement set forth in this Settlement Agreement, Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, provide those members of the Class who have been identified by reasonable means with notice by first class mail of the pendency of this Action, the conditional certification of the Class and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed settlement. Class Counsel shall take all necessary and appropriate steps to ensure that such notice is provided in accordance with the order of the Court. Notice to the members of the Class shall also be given by publication as ordered by the Court, and by publication on the web site established by Class Counsel and/or, subject to Court approval, on the Court's web site.

### C. Motion for Final Approval and Entry of Final Judgment

If the Court preliminarily approves this Settlement Agreement, Class Counsel shall submit a motion for final approval of this Settlement Agreement by the Court, after appropriate Court-approved notice to the Class, and shall seek entry of an order and final judgment:

1. fully and finally approving, the settlement contemplated by this Settlement Agreement, and its terms as being a fair, reasonable and adequate settlement within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

2. directing that this Action be dismissed with prejudice and, except as provided for herein, without cost;

3. discharging and releasing the Releasees from all Released Claims;

4. reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including its administration and consummation;

5. directing that the judgment of dismissal be final and appealable; and

6. directing that for a period of five (5) years, the Court shall maintain the records of those members of the Class who have timely and validly excluded themselves from the Class and that a certified copy of such records shall be provided to Bristol at its request.

### D. Finality

This Settlement Agreement shall become final upon the occurrence of all of the following ("Final Approval"):

1. The settlement has been approved by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

2. Entry, as provided for in Paragraph IV.C. above, is made of the final judgment of dismissal;

3. Bristol has not availed itself of any right to terminate this Settlement Agreement; and

4. The time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as described in Paragraph IV.C. above has expired, or if appealed, either (i) such appeal has been dismissed prior to resolution by an appellate court; or (ii) approval of this Settlement Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

## V. *APPLICATION FOR ATTORNEY FEES*

### A. *Attorney Fees*

Understanding that the award of attorney fees for Class Counsel is a matter committed to the sound discretion of the Court, Bristol will not object to Class Counsel's request to the Court for a reasonable attorney fee not to exceed the sum of:

1. Thirty-three and one-third percent (33⅓ %) of: the Settlement Fund minus, if applicable, the LDR, RK and MB Group Reversion Amounts and Group Discounts; and

2. If applicable, the LDR, RK and MB Group Discounts.

### B. *Payment of Expenses*

Bristol shall not be liable for any of the expenses of the litigation of this Action or the Related Actions, including without limitation attorneys' fees, fees and expenses associated with the provision of notice to the members of the Class, fees and expenses incurred in administering the Escrow Account, fees and expenses of expert witnesses and consultants, and expenses associated with discovery, motion practice, hearings before the Court and appeals; except as provided in Paragraph VII. All such expenses as are approved by the Court shall be paid out of the Settlement Fund.

## VI. *RELEASES AND RESERVATION OF CLAIMS AND RIGHTS*

### A. *Releases*

In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that the Court gives Final Approval to this Settlement Agreement, each Releasee shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including without limitation costs, expenses, fines, penalties and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, whether or not they make a claim on or participate in the Settlement Fund, ever had, now have or hereafter can, shall or may have, relating in any way to any conduct, act or failure to act, prior to the date of this Settlement Agreement, concerning the purchase, sale, or pricing of Taxol or generic paclitaxel, or relating to any conduct, act or failure to act, alleged in this Action including, without limitation, any such claims that have been asserted or could have been asserted based on the facts alleged in the operative complaint in this Action against the Releasees; provided however, that nothing herein shall act as a release of any claim that does not

arise from or relate to the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged by Vista in this Action, including, but not limited to, claims based on the allegations asserted in *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* MDL No. 1456. The claims covered by the foregoing release are referred to herein collectively as the "Released Claims." Each Releasor hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any Releasee based in whole or in part on any Released Claims.

In addition, each Releasor hereby expressly waives and releases, upon this Settlement Agreement becoming final, any and all provisions, rights, benefits conferred by section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

and any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to section 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the Released Claims, but each Releasor hereby expressly waives and fully, finally and forever settles and releases, upon this Settlement Agreement becoming final, the Released Claims, whether any Released Claim is known or unknown, suspected or unsuspected, contingent or non-contingent, concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully,

and finally and forever settles any and all Released Claims it may have under § 17200, *et seq.,* of the California Business and Professions Code.

### B. *Reservation of Claims*

The Third–Party Payor Class Members intend by this Settlement Agreement to settle with and release only the Releasees, and the parties do not intend this Settlement Agreement, or any part hereof, to release or otherwise affect in any way any rights Third–Party Payor Class Members have or may have against any other party or entity whatsoever other than the Releasees, including, but not limited to ABI. In addition, the releases set forth in Paragraph VI.A. above shall not release any claims for product liability, breach of contract, breach of warranty, personal injury or similar claims unrelated to the subject matter of the Released Claims. In addition, the releases set forth in Paragraph VI.A. shall not release any claims based on the allegations asserted in *In re: Pharmaceutical Industry Average Wholesale Price Litigation,* MDL No. 1456.

### C. *Reservation of Rights*

The parties hereto agree that this Settlement Agreement, whether or not it becomes final pursuant to Paragraph IV.D. above, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party; shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Bristol or of the truth of any of the claims or allegations contained in the complaint or any other pleading; and evidence thereof shall not be discoverable or used directly or indirectly by the Class or any third party, in any way (except that the provisions of this Settlement Agreement may be used by the parties to enforce the provisions of the

Settlement Agreement), whether in this Action, the Related Actions, or in any other action or proceeding. The parties expressly reserve all their rights if this Settlement Agreement does not become final substantially in accordance with the terms of this Settlement Agreement.

## VII. *TERMINATION*

### A. *Effect of Exclusion by Class Members.*

1. If, after notice of the Settlement is sent to the Class, Class Members with aggregate Taxol Payments exceeding a percentage set forth in a confidential letter from Lead Counsel to Bristol's counsel ("Confidential Percentage") of the TPP Total Aggregate Taxol Payments (other than exclusions by members of the LDR Group and the RK Group) exclude themselves from the Class, then Bristol may, at its option terminate this Settlement Agreement. The parties agree to negotiate in good faith to determine whether the Confidential Percentage has been exceeded. If the parties cannot resolve the matter through negotiation by September 15, 2003, then the parties agree to submit the issue to the Court by September 22, 2003, and shall request that the Court resolve the issue by October 3, 2003. The Court's resolution of this issue shall be final and all parties waive any right to appeal.

2. To be effective, Bristol's right to terminate this Settlement Agreement pursuant to Paragraph VII.A. must be exercised by giving written notice to Lead Counsel within five (5) business days of: (i) the Settling Parties agreeing in writing that the percentage in the confidential letter has been exceeded, or, if applicable, (ii) the Court's determination of the matter.

### B. *Effect of Disapproval*

If the Court does not finally approve this Settlement Agreement in its entirety, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the final judgment substantially in the form provided for in Paragraph IV.C. above, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed or is affirmed with material modifications, then this Settlement Agreement may be terminated upon the election of Bristol or Lead Counsel. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such final judgment and shall not give rise to any right of termination.

### C. *Termination*

If this Settlement Agreement is terminated pursuant to Paragraphs VII.A. or VII.B above, or does not become final pursuant to Paragraph IV.D. above for any reason, then the Settlement Fund, net of (i) taxes paid or reimbursed or due to be paid or reimbursed on the Settlement Fund, (ii) the costs paid or incurred for administering the Settlement Fund, and (iii) the expenses paid or incurred for providing notice to the Class, (a) shall be returned to Bristol; (b) the Settlement Agreement shall be of no force or effect, except for payment of notice and administrative fees and costs from the Settlement Fund; (c) any release pursuant to Paragraph VI.A. shall be of no force or effect; and (d) the parties shall request that the Court vacate any order certifying the Class. The parties expressly reserve all of their rights if this Settlement Agreement is terminated or does not become final.

## VIII. *MISCELLANEOUS*

### A. *Reasonable Best Efforts to Effectuate This Settlement Agreement*

The Settling Parties and their counsel agree to undertake their reasonable best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement.

### B. *No Admission*

Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by Bristol including, without limitation, that Bristol has engaged in any conduct or practice that violates any antitrust statute, unfair and deceptive trade practices statute or other law. Neither this Settlement Agreement, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by Bristol as to the validity of any claim that Third–Party Payor Class Representatives or the Class have or could have asserted against it or as to any liability by it, which liability is hereby expressly denied and disclaimed by Bristol. Neither this Settlement Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith (including any Stipulated Injunction entered into by Bristol and the Plaintiffs in the States Action, its terms, any consent order entered into between Bristol and the Federal Trade Commission concerning or relating to the matters alleged in this Action and the terms of such consent order) nor the fact of this Settlement Agreement, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in connection with the parties' application for approval or enforcement of this Settlement Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the Class.

### C. *Revision of Certain Dates*

Several dates in this Settlement Agreement are based on the assumption that the Court approves plaintiff's motion for preliminary approval which shall request that all Proof of Claims and Notices of Exclusions be mailed to the Settlement Administrator and/or counsel no later than August 20, 2003. If the Court orders a later deadline for the mailing of such materials, then the parties agree to revise any dates herein, as necessary due to the changed date, in a writing signed by both parties. Furthermore, the parties agree, if it becomes reasonably necessary under the circumstances, to work together in good faith to revise dates herein by a writing signed by both parties.

### D. *Stay and Resumption of Discovery*

The Settling Parties agree, subject to approval of the Court, that discovery shall be stayed except to the extent discovery is necessary with respect to Third–Party Payor Opt Outs and for purposes of administering and consummating this Settlement Agreement. In the event that this Settlement Agreement is not approved by the Court or the settlement does not become final pursuant to Paragraph IV.D., or is terminated pursuant to Paragraphs VII.A. or VII.B. above, discovery will resume in this Action and the Related Actions in a reasonable manner to be approved by the Court.

### E. *Consent to Jurisdiction*

Bristol, Third–Party Payor Class Representatives and Class Counsel hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement, the applicability of this Settlement Agreement or any issue related to fees and costs.

### F. *Resolution of Disputes: Retention of Jurisdiction*

Any disputes between or among Bristol and any Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement.

### G. *Enforcement of Settlement Agreement*

Notwithstanding Paragraphs VI.C. and VIII.B. above, this Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

### H. *Binding Effect*

This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Third–Party Payor Class Representatives and their counsel shall be binding upon all settling Class Members.

### I. *Authorization to Enter Settlement Agreement*

Counsel for Bristol represents that it is fully authorized to enter into and to execute this Settlement Agreement on behalf of Bristol. Lead Counsel represents that it is fully authorized to conduct settlement negotiations with defense counsel on behalf of the Third–Party Payor Class Representatives and Class Counsel, and to enter into, and to execute, this Settlement Agreement on behalf of the Class and Class Counsel, subject to Court approval pursuant to Fed.R.Civ.P. 23(e).

### J. *No Party Is the Drafter*

None of the Settling Parties shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

### K. *Choice of Law*

All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

### L. *Amendment; Waiver*

This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

## M. *Execution in Counterparts*

This Settlement Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

## N. *Integrated Agreement*

This Settlement Agreement, along with the above-referenced confidential letter and Escrow Agreement, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the Settling Parties.

## O. *Notice*

Any and all notices intended for any party of this Settlement Agreement shall be in writing and shall be sent by fax and postage prepaid mail as follows:

To Vista, the Class or Lead Counsel:

Kevin Love, Esq.

Hanzman & Criden, P.A.

220 Alhambra Circle, Suite 400

Coral Gables, FL 33134

(Fax: 305–357–9050)

To Bristol:

Richard J. Stark, Esq.

Cravath, Swaine & Moore LLP

Worldwide Plaza

825 Eighth Avenue

New York, N.Y. 10019

(Fax: 212–474–3700)

## P. *Construction*

This Settlement Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Settlement Agreement, for a complete resolution of the Released Claims with respect to the Releasees.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Settlement Agreement as of the date first herein above written.

THIRD–PARTY PAYOR LEAD COUNSEL AND COUNSEL FOR VISTA HEALTHPLAN, INC.

### *Exhibit A*

### DECLARATION OF SETTLING HEALTH PLAN

#### Pursuant to

**Settlement Agreement between Bristol–Myers Squibb Company and Settling Health Plans, dated May ___, 2003 ("Settlement Agreement")**

**Stipulation of Settlement between Vista Health Plan, Inc. and Ramona Sakiestewa, dated May ___, 2003**

1. I, ___[individual's name]___ , am a duly authorized representative of [SHP name], a Settling Health Plan ("SHP"), with the authority to submit Claim Documentation on behalf of ___[SHP name]___ .

2. As a Settling Health Plan, ___[SHP name]___ has authority to settle the claims asserted in *Vista Healthplan, Inc. et al. v. Bristol–Myers Squibb Co. and American BioScience, Inc.*, Case No. 1:01CV01295 (EGS) (D.D.C.), as to all of its Taxol Payments and to release all claims related to such payments on behalf of itself and each plan identified in Exhibit A to this declaration (each a "Claiming Plan") (to the extent the Claiming Plan has been administered by the SHP).

3. The total dollar amount of Taxol Payments (as defined in the Settlements Agreements identified above) being claimed by the SHP and each Claiming Plan listed in Exhibit A is $_____ for transactions in the

January 1, 1999 through December 31, 2002 time period. A computer report evidencing this figure has been provided.

4. The name and Federal Employer Identification Number of [SHP name] and each Claiming Plan is set forth in Exhibit A to this Declaration.

5. [SHP name] and each Claiming Plan identified in Exhibit A (to the extent the Claiming Plan has been administered by the SHP) waive any right they may have to exclude themselves from any class action settlement involving any of the claims asserted in *Vista Healthplan, Inc. et al. v. Bristol–Myers Squibb Co. and American BioScience, Inc.*, Case No. 1:01CV01295 (EGS) (D.D.C.).

6. [SHP name] and each Claiming Plan identified in Exhibit A (to the extent the Claiming Plan has been administered by the SHP) waive any right they may have to receive any distribution from any class action settlement involving any of the claims asserted in *Vista Healthplan, Inc. et al. v. Bristol–Myers Squibb Co. and American BioScience, Inc.*, Case No. 1:01CV01295 (EGS) (D.D.C.).

7. [SHP name] was represented by [INSERT Lowey Dannenberg Bemporad & Selinger, P.C., Robins, Kaplan, Miller & Ciresi LLP, Miner, Barnhill & Galland, P.C. or Rawlings & Associates] on or before the date of this Declaration, for claims arising from Taxol Payments.

I certify under penalty of perjury that the foregoing is true and correct.

### STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Settlement Agreement") is made and entered into as of this 27 day of MAY, 2003, between Vista Healthplan, Inc. ("Vista"), one of the named plaintiffs in the above-styled action, individually and as representative of the proposed Third–Party Payor Class [1], and American BioScience, Inc. ("ABI"), one of the named Defendants in this action.

WHEREAS, Vista commenced this action on June 11, 2001, against ABI and Bristol–Myers Squibb Company ("Bristol"), alleging that Defendants delayed the entry of generic paclitaxel from coming to market thereby causing indirect purchasers to pay supra-competitive prices for Taxol and generic paclitaxel;

WHEREAS, Vista's Complaint asserted violations of federal antitrust law, state antitrust and/or unfair business competition statutes and state common law;

WHEREAS, ABI denies that it has committed any violation of law or engaged in any wrongdoing, denies any and all liability to Vista and the Class, denies that it is subject to jurisdiction in the District of Columbia, and has asserted a number of defenses to Vista's claims;

WHEREAS, since the filing of this Action, Vista and Class Counsel have engaged in an extensive investigation relating to the claims and underlying events alleged in the Complaint. Among other things, Class Counsel have: (1) reviewed and analyzed thousands of documents produced by Bristol, ABI and third parties; (2) engaged in legal research and analysis of a myriad of issues relating to certification, liability, causation and damages; (3) briefed substantive motions on liability and certification; and (4) retained and consulted with economists and other experts with respect to causation and damages allegedly sustained by the Class as a result of the

---

1. Capitalized terms, unless otherwise noted, are defined below in Section I of this Settlement Agreement.

wrongful conduct alleged in the Complaint. Class Counsel are therefore thoroughly familiar with issues of certification, liability, causation and damages with respect to the claims asserted in the Complaint and defenses asserted in ABI's Answer;

WHEREAS, Class Counsel have engaged in extensive discovery, thoroughly investigated the facts of this Action, considered ABI's defenses, and reviewed the pertinent statutory and case law on liability and class certification, Class Counsel have concluded that it would be in the best interests of the Class to enter into this Settlement Agreement with ABI because the Settlement would be a fair, reasonable and adequate resolution of this Action;

WHEREAS, ABI, while continuing to deny vigorously Vista's allegations and any liability with respect to any and all claims asserted in the Complaint, nevertheless recognizes the costs and uncertainties attendant upon further litigation of the claims in this Action, and has therefore concluded that it is desirable to enter into this Settlement Agreement to avoid further expense;

WHEREAS, it is the intention of the Settling Parties that this Settlement resolve, compromise and settle all claims of the Class against ABI as more particularly provided below;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and among the Settling Parties, through their undersigned counsel, subject to Court approval pursuant to Fed.R.Civ.P. 23(e), to all of the terms and conditions set forth herein, as follows:

## I. *DEFINITIONS*

As used in this Settlement Agreement, the following terms shall have the following meanings:

A. "ABI" shall mean defendant American BioScience, Inc.

B. "Action" shall mean *Vista Healthplan, Inc. et al. v. Bristol–Myers Squibb Co. and American BioScience, Inc.,* Case No. 1:01CV01295 (EGS) (D.D.C.).

C. "Allocation and Distribution Plan" shall mean, subject to Court approval, the following: The Settling Parties agree that the "Net Settlement Fund" shall be allocated and distributed as follows:

(1) All Class Members' timely and valid claims shall be valued as follows: The sum of all Taxol Payments multiplied by seventeen percent (17%). This amount shall be referred to as the Class Member's "Recognized Loss."

(2) To satisfy the Recognized Loss of Non–J–Code Class Members, thirty thousand dollars ($30,000) of the Net Settlement Fund (or other amount approved by the Court) shall be set aside as the Preferential Fund.

(3) The Recognized Loss of Non–J–Code Class Members and J–Code Class Members shall be paid out of the Net Settlement Fund as follows:

(a) The Recognized Loss of Non–J–Code Class Members shall first be paid out of the Preferential Fund on a pro-rata basis;

(b) To the extent that the Recognized Loss of Non–J–Code Class Members is not one hundred percent (100%) satisfied from the Preferential Fund, the unsatisfied amounts of the Recognized Loss of the Non–J–Code Class Members will be paid from the Non–Preferential Fund *together* with the Recognized Loss of J–Code Class Members on a pro-rata basis.

(c) If the Recognized Loss of Non–J–Code Class Members is one hundred percent (100%) satisfied from

the Preferential Fund, and there remains money in the Preferential Fund, the remaining money will be added to the Non–Preferential Fund for payment of J–Code Class Members' Recognized Loss on a pro-rata basis.

(d) To the extent that a Class Member used more than one reimbursement or payment system during the Class Period; and further, has valid claims as a Non–J–Code Class Member for only part of the Class Period, that Class Member's claims shall be allocated as follows: (1) the Class Member shall disclose, if applicable, the date when the Class Member switched to or from using a reimbursement or payment system based on a J–Code Medicare Fee Schedule (or any similar reimbursement or payment system), together with any other information relevant to determining the proportion of its Taxol Payments that were made under a Non–J–Code reimbursement or payment system (or similar system); (2) based on the date and other information disclosed, the Claims Administrator shall calculate the Class Member's actual breakdown of Taxol Payments or, if applicable, calculate the percentage of the Class Period that the Class Member was a Non–J–Code Class Member; and (3) the Class Member will be treated as both a J–Code Class Member and a Non–J–Code Class Member for purposes of Paragraph I.B.(3)(a)-(c) hereof, according to its actual breakdown of Taxol Payments or percentage determined in subsection (2) above, if applicable. For illustration purposes only of calculating the above-mentioned percentage, if a Class Member has a $1,000,000 Recognized Loss, was a J–Code Class Member from January 1, 1999 though December 31, 2001 and a Non–J–Code Class Member for the rest of the Claim Period, then the Claims Administrator would calculate that the Class Member was a J–Code Class Member for 75% of the Class Period, and would deem that Class Member to have a $750,000 Recognized Loss as a J–Code Class Member and a $250,000 Recognized Loss as a Non–J–Code Class Member.

D. "Bristol" shall mean defendant Bristol–Myers Squibb Company.

E. Subject to the Court's approval and for the purposes of this Settlement Agreement only, the undersigned agree and consent to the certification of the following Third–Party Payor Class [hereinafter "Third–Party Payor Class" or "Class"]:

All "Third–Party Payors" (defined immediately below) in the United States which, at any time from January 1, 1999 through December 31, 2002, paid, in whole or in part, for Taxol and/or generic paclitaxel in the United States. Excluded from the Class are Defendants, their subsidiaries, affiliates, officers and directors, and government entities.

"Third–Party Payor" shall mean any entity that (i) is a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides coverage for the administration of Taxol or generic paclitaxel to natural persons, and (ii) is also at risk, pursuant to such contract, policy or plan, to pay or reimburse all or part of the costs of providing such coverage.

A self-funded health benefit plan for employees of a government entity that satisfies the definition of "Third–Party

Payor" shall not be considered a "government entity."

F. "Class Counsel" shall mean all counsel representing Vista and the Class in this Action and all counsel representing Third-Party Payor Class Representatives in the Related Actions.

G. "Class Period" shall mean January 1, 1999 through December 31, 2002.

H. "Defendants" shall mean Bristol and ABI.

I. "Direct Action" shall mean *Oncology & Radiation Assocs., P.A. v. Bristol-Myers Squibb Co. and American Bioscience, Inc.,* Case No. 1:01CV02313 (EGS) (D.D.C.).

J. "J–Code Class Member" shall mean any member of the Class that utilized a reimbursement or payment system for Taxol Payments during all or part of the Class Period that employed, or was based upon, a J–Code Medicare Fee Schedule (or any similar reimbursement or payment system). Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan.

K. "J–Code Medicare Fee Schedule" shall mean a fee schedule used by or authored by the Health Care Financing Administration, Centers for Medicare & Medicaid Services, and/or Medicare that employed a Code of "J9265" to represent Taxol or generic paclitaxel and listed fees for J9265 that did not change during the Class Period.

L. "Net Settlement Fund" shall mean the amount of the Settlement Fund to be distributed to members of the Class (the amount of money referred to in Paragraph III.(b)(vii)).

M. "Non–J–Code Class Members" shall mean those members of the Class which are not J–Code Class Members. Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system at the same time during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan.

N. "Non–Preferential Fund" shall mean the Net Settlement Fund less the amount of money approved by the Court to be included in the Preferential Fund, which the Court shall set aside to satisfy the claims of J–Code Class Members, in accordance with the Allocation and Distribution Plan.

O. "Preferential Fund" shall mean thirty thousand dollars ($30,000) or other amount that is set aside by the Court from the Settlement Fund to satisfy the claims of Non–J–Code Class Members, in accordance with the Allocation and Distribution Plan.

P. "Releasees" shall mean ABI and its present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, and their respective present and former officers, directors, employees, managers, agents, attorneys and legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

Q. "Releasors" shall mean each Third-Party Payor Class Member on its own behalf and on behalf of, and including, its respective present and former direct and indirect parents, subsidiaries, divisions, partners and affiliates, their respective present and former officers, directors, em-

ployees, managers, agents, attorneys and legal representatives, and the predecessors, successors, heirs, executors, trustees, administrators and assigns of each of the foregoing. As used in this Paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

R. "Settlement Fund" or "Settlement Amount" shall mean the sum of one hundred and eighty-five thousand dollars ($185,000) that ABI will pay into the Escrow Account, plus all accrued income and interest.

S. "Settling Parties" shall mean Vista and ABI.

T. "Third–Party Payor" shall mean any entity that (i) is a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides coverage for the purchase or administration of Taxol or generic paclitaxel to natural persons, and (ii) is also at risk, pursuant to such contract, policy or plan, to pay or reimburse all or part of the costs of providing such coverage.

U. "Third–Party Payor Class Member" or "Class Member" shall mean any entity falling within the definition of the Class which has not timely and validly excluded itself from the Class in accordance with the procedure to be established by the Court.

V. "Third–Party Payor Settlement Fund Escrow Account" shall mean the escrow account set up at Gibraltar Bank, FSB, or another financial institution that the Settling Parties mutually agree upon, by virtue of the escrow agreement entered into by the Settling Parties.

W. "Taxol Payments" shall mean the dollar amount of purchases of the brand name prescription drug Taxol and generic paclitaxel, less any reimbursements, rebates or discounts, during the Class Period. For the purposes of this Settlement Agreement, a Third–Party Payor "purchases" Taxol or generic paclitaxel if they paid or reimbursed some or all of the purchase price.

X. "TPP Total Aggregate Taxol Payments" shall mean the sum of all Taxol Payments reported on all timely and validly filed Claim Documentation, timely and validly filed proof of claims, notices of exclusion (or reasonable estimates of the foregoing if necessary) and any estimates or determinations by counsel or the Court of Taxol Payments required under this Settlement Agreement of members of the LDR and RK Groups.

Y. "Related Actions" shall mean: (i) *Plumbers & Pipefitters Local 572 Health & Welfare Fund, et al. v. Bristol–Myers Squibb Company,* Case No. 00–C–2525, pending in the Circuit Court for the State of Tennessee, Twentieth Judicial District; (ii) *Dzierlatka v. Bristol–Myers Squibb Co. and American Bioscience, Inc.,* Case No. BC276039, pending in the Superior Court of the State of California, County of Los Angeles, Central Judicial District; and (iii) *Donnelly v. Bristol–Myers Squibb Company,* Case No. 01–CV–3785, pending in the District Court of Johnson County, Kansas.

Z. "Third–Party Payor Lead Counsel" or "Lead Counsel" shall mean the law firm of Hanzman & Criden, P.A.

AA. "Third–Party Payor Opt Out" shall mean any Third–Party Payor falling within the definition of the Class that has timely and validly excluded itself from the Class in accordance with the procedures to be established by the Court. If necessary to effectuate any part of this Settlement Agreement, the Settling Parties agree to use any and all reasonable means (including issuing subpoenas) to calculate the Taxol Payments for, and gather any other

pertinent information related to, for each Third–Party Payor Opt Out.

BB "Third–Party Payor Class Representatives" shall mean the named plaintiffs in this Action and the Related Actions.

CC. "United States" shall mean the United States of America and its territories and possessions.

## II. SETTLEMENT FUND

### A. Settlement Consideration

Subject to the provisions hereof, and in full, complete, and final settlement of this Action as provided herein, ABI agrees to pay by wire transfer one hundred and eighty-five thousand dollars ($185,000) into the Third–Party Payor Settlement Fund Escrow Account ("Escrow Account") by the later of October 15, 2003, or (b) the date which is five (5) business days prior to the date that Lead Counsel informs ABI's Counsel is the date upon which monies from the Settlement Fund are ready to be distributed to the Class; but in no event later than February 15, 2004. The Escrow Account shall be established and administered pursuant to an escrow agreement in a form satisfactory to the parties hereto. The Settlement Fund may be invested at the direction of Lead Counsel in United States Treasury Bills, United States Treasury Notes, or other instruments insured or guaranteed by the full faith and credit of the United States (or other instruments, accounts or funds permitted by the escrow agreement), and any interest or income earned thereon shall become part of the Settlement Fund.

As security for the future payment of $185,000, ABI agrees to pledge stock with a market value of not less than $250,000 owned by it in its subsidiary, American Pharmaceutical Partners, Inc., pursuant to a securities account pledge agreement containing terms agreed to by the parties, to

be executed by the parties no later than ten (10) calendar days after preliminary approval of the settlement between the parties is granted by the Court.

### B. Qualified Settlement Fund

The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B–1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. Whether or not Final Approval of this settlement has occurred, and whether or not the Escrow Account qualifies as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B–1, Lead Counsel shall cause to be paid from the Escrow Account any taxes or estimated taxes due on any income earned on the funds in the Escrow Account and all related costs, expenses and penalties, including any tax liabilities or penalties imposed on ABI with respect to such income. Third–Party Payor Class Members shall have no recourse against ABI for such amounts paid out of the Settlement Fund. If amounts received by the Third–Party Payor Class Members, or any portion thereof, are construed to be income, it is their sole responsibility to pay taxes on the amount construed to be income, plus any penalties or interest, and ABI shall have no liability for such taxes, penalties or interest.

### C. All Claims Satisfied by Settlement Fund

Each Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by Third–Party Payor Class Members pursuant to this Settlement Agreement. Except as provided by

order of the Court pursuant to this Settlement Agreement, no Third–Party Payor Class Member shall have any interest in the Settlement Fund or any portion thereof.

### D. *Production to Third Parties*

Vista and Class Counsel shall not voluntarily provide work product, expert or consultant analyses, IMS data, or any other documents related to this Action to any Third–Party Payor Opt Out or to any other person, and shall prohibit, to the extent permissible, any experts previously retained by Class Counsel in connection with this Action from accepting an engagement in any action based on the same subject matter of this Action.

### E. *Dismissal of Related Actions*

Upon Final Approval (as defined in Paragraph IV.D.), Lead Counsel shall use all reasonable means to seek dismissal with prejudice of all Related Actions with all parties in those actions responsible for their own fees and costs associated with those actions, without prejudice of the plaintiffs in those actions participating in the settlements reached in this Action or the States Action.

### F. *Dismissal of Ramona Sakiestewa's Claims Without Prejudice*

Upon Final Approval (as defined in Paragraph IV.D.), the parties agree and stipulate pursuant to Rule 41(a)(1) that Plaintiff Ramona Sakiestewa shall dismiss all of her claims in the Action without prejudice to her participating in the settlement reached in the States Action.

### III. *DISTRIBUTION OF THE SETTLEMENT FUND*

The Settlement Fund shall be distributed as follows or as otherwise ordered by the Court:

(a) Prior to this Settlement Agreement becoming final pursuant to Paragraph IV.D. below:

(i) disbursements for the costs of administration of the Settlement Fund may be made by the Escrow Agent with notice to Lead Counsel and ABI;

(ii) disbursements for the payment or reimbursement of any taxes (including any estimated taxes, interest or penalties) due or imposed, as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to Lead Counsel and ABI; and

(iii) disbursements for the expense of Class notice may be made at the direction of Lead Counsel pursuant to the settlement documentation and Court order with notice of such disbursements provided to ABI.

(b) If this Settlement Agreement becomes final pursuant to the provisions of Paragraph IV.D. below, the Settlement Fund shall be distributed as follows:

(i) first, disbursements for the costs of administration of the Settlement Fund may be made by the Escrow Agent with notice of such disbursements provided to Lead Counsel;

(ii) second, disbursements for the payment or reimbursement of any taxes (including any estimated taxes, interest or penalties) due, as a result of income earned by the Settlement Fund shall be made promptly by the Escrow Agent pursuant to the Escrow Agreement with notice of such disbursements provided to Lead Counsel;

(iii) third, any incentive award determined by the Court for services rendered to the Class by the Third–Party Payor Class Representatives shall be distributed to the Third–Party Class Representatives;

(iv) fourth, reasonable litigation and settlement expenses incurred by the settlement administrator and any other third-parties, as determined by the Court, shall be distributed to the settlement administrator and such other third-parties;

(v) fifth, any attorney fee awarded by the Court to Class Counsel pursuant to Paragraph V.A. below, together with reasonable out-of-pocket expenditures by Class Counsel as determined by the Court, shall be paid to Lead Counsel for distribution to Class Counsel at its sole discretion;

(vi) sixth, disbursements for the expense of Class notice may be made at the direction of Lead Counsel pursuant to the settlement documentation and Court order; and

(vii) seventh, the remaining amount of the Settlement Fund shall be distributed to members of the Class.

(c) In the event that the Settlement Agreement does not receive Preliminary or Final Approval, is terminated, becomes null and void for any reason or does not become final pursuant to Paragraph IV.D. below (a "Terminating Event"), the Escrow Agent shall upon the expiration of ten (10) days, subject only to the expiration of any time deposit investment(s) not to exceed ninety days, following receipt by the Escrow Agent and Lead Counsel of written notice signed by counsel for ABI stating that the Settlement Agreement has been subject to a Terminating Event and without order of the Court, return the Settlement Fund including interest and income earned, less (i) the notice costs incurred up to the date of return and (ii) any fees and/or expenses incurred in maintaining the Escrow Account, including taxes and fees pursuant to the Escrow Agreement, to ABI.

(d) ABI and its counsel shall have no liability or responsibility whatsoever with respect to disbursements or distributions from, or administration of, the Settlement Fund.

## IV. APPROVAL AND NOTICE

### A. Motion for Preliminary Approval

As soon as possible and in no event later than ten (10) business days after execution of this Settlement Agreement, Class Counsel shall submit to the Court a motion for preliminary approval of the settlement set forth in this Settlement Agreement.

### B. Notice to End–Payor Class

In the event that the Court preliminarily approves the settlement set forth in this Settlement Agreement, Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, provide those members of the Class who have been identified by reasonable means with notice by first class mail of the pendency of this Action, the conditional certification of the Class and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed settlement. Class Counsel shall take all necessary and appropriate steps to ensure that such notice is provided in accordance with the order of the Court. Notice to the members of the Class shall also be given by publication as ordered by the Court, and by publication on the web site established by Class Counsel and/or, subject to Court approval, on the Court's web site.

### C. Motion for Final Approval and Entry of Final Judgment

If the Court preliminarily approves this Settlement Agreement, Class Counsel shall submit a motion for final approval of this Settlement Agreement by the Court, after appropriate Court-approved notice to the Class, and shall seek entry of an order and final judgment:

1. fully and finally approving, the settlement contemplated by this Settlement Agreement, and its terms as being a fair, reasonable and adequate settlement within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

2. directing that this Action be dismissed with prejudice and, except as provided for herein, without costs;

3. discharging and releasing the Released Parties from all Released Claims;

4. reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including its administration and consummation;

5. directing that the judgment of dismissal be final and appealable; and

6. directing that for a period of five (5) years, the Court shall maintain the records of those members of the Class who have timely and validly excluded themselves from the Class and that a certified copy of such records shall be provided to ABI at its request.

### D. Finality

This Settlement Agreement shall become final upon the occurrence of all of the following ("Final Approval"):

1. The settlement has been approved by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

2. Entry, as provided for in Paragraph IV.C. above, is made of the final judgment of dismissal;

3. ABI has not availed itself of any right to terminate this Settlement Agreement; and

4. The time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as described in Paragraph IV.C. above has expired, or if appealed, either (i) such appeal has been dismissed prior to resolution by an appellate court; or (ii) approval of this Settlement Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

## V. APPLICATION FOR ATTORNEY FEES

### A. Attorney Fees

Understanding that the award of attorney fees for Class Counsel is a matter committed to the sound discretion of the Court, ABI will not object to Class Counsel's request to the Court for a reasonable attorney fee not to exceed the sum of thirty-three and one-third percent (33⅓ %) of the Settlement Fund.

### B. Payment of Expenses

ABI shall not be liable for any of the expenses of the litigation of this Action or the Related Actions, including without limitation attorneys' fees, fees and expenses associated with the provision of notice to the members of the Class, fees and expenses incurred in administering the Escrow Account, fees and expenses of expert witnesses and consultants, and expenses associated with discovery, motion practice, hearings before the Court and appeals; except as provided in Paragraph VII. All

such expenses as are approved by the Court shall be paid out of the Settlement Fund.

## VI. *RELEASES AND RESERVATION OF CLAIMS AND RIGHTS*

### A. *Releases*

In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that the Court gives Final Approval to this Settlement Agreement, each Releasee shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including without limitation costs, expenses, fines, penalties and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, whether or not they make a claim on or participate in the Settlement Fund, ever had, now have or hereafter can, shall or may have, relating in any way to any conduct, act or failure to act, prior to the date of this Settlement Agreement, concerning the purchase, sale, or pricing of Taxol or generic paclitaxel, or relating to any conduct, act or failure to act, alleged in this Action including, without limitation, any such claims that have been asserted or could have been asserted based on the facts alleged in the operative complaint in this Action against the Releasees; provided however, that nothing herein shall act as a release of any claim that does not arise from or relate to the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged by Vista in this Action. The claims covered by the foregoing release are referred to herein collectively as the "Released Claims." Each Releasor hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any Releasee based in whole or in part on any Released Claims.

In addition, each Releasor hereby expressly waives and releases, upon this Settlement Agreement becoming final, any and all provisions, rights, benefits conferred by section 1542 of the California Civil Code, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

and any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to section 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the Released Claims, but each Releasor hereby expressly waives and fully, finally and forever settles and releases, upon this Settlement Agreement becoming final, the Released Claims, whether any Released Claim is known or unknown, suspected or unsuspected, contingent or non-contingent, concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, and finally and forever settles any and all Released Claims it may have under § 17200, *et seq.*, of the California Business and Professions Code.

### B. *Reservation of Claims*

The Third–Party Payor Class Members intend by this Settlement Agreement to settle with and release only the Releasees, and the parties do not intend this Settlement Agreement, or any part hereof, to

release or otherwise affect in any way any rights Third–Party Payor Class Members have or may have against any other party or entity whatsoever other than the Releasees. In addition, the releases set forth in Paragraph VI.A. above shall not release any claims for product liability, breach of contract, breach of warranty, personal injury or similar claims unrelated to the subject matter of the Released Claims.

### C. *Reservation of Rights*

The parties hereto agree that this Settlement Agreement, whether or not it becomes final pursuant to Paragraph IV.D. above, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party; shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by ABI, of the District of Columbia Court's having jurisdiction over ABI or of the truth of any of the claims or allegations contained in the complaint or any other pleading; and evidence thereof shall not be discoverable or used directly or indirectly by the Class or any third party, in any way (except that the provisions of this Settlement Agreement may be used by the parties to enforce the provisions of the Settlement Agreement), whether in this Action, the Related Actions, or in any other action or proceeding. The parties expressly reserve all their rights if this Settlement Agreement does not become final substantially in accordance with the terms of this Settlement Agreement.

## VII. *TERMINATION*

### A. *Effect of Exclusion by Class Members.*

1. If, after notice of the Settlement is sent to the Class, Class Members with aggregate Taxol Payments exceeding a percentage set forth in a confidential letter from Lead Counsel to ABI's counsel ("Confidential Percentage") of the TPP Total Aggregate Taxol Payments exclude themselves from the Class, then ABI may, at its option terminate this Settlement Agreement. The parties agree to negotiate in good faith to determine whether the Confidential Percentage has been exceeded. If the parties cannot resolve the matter through negotiation by September 15, 2003, then the parties agree to submit the issue to the Court by September 22, 2003, and shall request that the Court resolve the issue by October 3, 2003. The Court's resolution of this issue shall be final and all parties waive any right to appeal.

2. To be effective, ABI's right to terminate this Settlement Agreement pursuant to Paragraph VII.A. must be exercised by giving written notice to Lead Counsel within five (5) business days of: (i) the Settling Parties agreeing in writing that the percentage in the confidential letter has been exceeded, or, if applicable, (ii) the Court's determination of the matter.

### B. *Effect of Disapproval*

If the Court does not finally approve this Settlement Agreement in its entirety, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the final judgment substantially in the form provided for in Paragraph IV.C. above, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed or is affirmed with material modifications, then this Settlement Agreement may be terminated upon the election of ABI or Lead Counsel. A modification or reversal on appeal of any amount of Class Counsel's fees and ex-

penses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such final judgment and shall not give rise to any right of termination.

### C. *Termination*

If this Settlement Agreement is terminated pursuant to Paragraphs VII.A. or VII.B above, or does not become final pursuant to Paragraph IV.D, above for any reason, then the Settlement Fund, net of (i) taxes paid or reimbursed or due to be paid or reimbursed on the Settlement Fund, (ii) the costs paid or incurred for administering the Settlement Fund, and (iii) the expenses paid or incurred for providing notice to the Class, (a) shall be returned to ABI; (b) the Settlement Agreement shall be of no force or effect, except for payment of notice and administrative fees and costs from the Settlement Fund; (c) any release pursuant to Paragraph VI.A. shall be of no force or effect; and (d) the parties shall request that the Court vacate any order certifying the Class. The parties expressly reserve all of their rights if this Settlement Agreement is terminated or does not become final.

## VIII. *MISCELLANEOUS*

### A. *Reasonable Best Efforts to Effectuate This Settlement Agreement*

The Settling Parties and their counsel agree to undertake their reasonable best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court on otherwise, to carry out the terms of this Settlement Agreement.

### B. *No Admission*

Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of an kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority present or future, by ABI including, without limitation, that ABI has engaged in any conduct or practice that violates any antitrust statute, unfair and deceptive trade practices statute or other law or that ABI is subject to jurisdiction in the District of Columbia. Neither this Settlement Agreement, nor any negotiations preceding it, nor any proceedings undertaken in accordance with the terms set forth herein, shall be construed as or deemed to be evidence of or an admission or concession by ABI as to the validity of any claim that Third-Party Payor Class Representatives or the Class have or could have asserted against it or as to any liability by it, which liability is hereby expressly denied and disclaimed by ABI. Neither this Settlement Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or any arbitration, except in connection with the parties' application for approval or enforcement of this Settlement Agreement and all proceedings incident thereto, including requests for attorneys' fees, costs and disbursements and compensation to the Class.

### C. *Revision of Certain Dates*

Several dates in this Settlement Agreement are based on the assumption that the Court approves plaintiff's motion for preliminary approval which shall request that all Proof of Claims and Notices of Exclusions be mailed to the Settlement Administrator and/or counsel no later than August 20, 2003. If the Court orders a later deadline for the mailing of such materials, then the parties agree to revise any dates here-

in, as necessary due to the changed date, in a writing signed by both parties. Furthermore, the parties agree, if it becomes reasonably necessary under the circumstances, to work together in good faith to revise dates herein by a writing signed by both parties.

### D. *Stay and Resumption of Discovery*

The Settling Parties agree, subject to approval of the Court, that discovery shall be stayed except to the extent discovery is necessary with respect to Third–Party Payor Opt Outs and for purposes of administering and consummating this Settlement Agreement. In the event that this Settlement Agreement is not approved by the Court or the settlement does not become final pursuant to Paragraph IV.D., or is terminated pursuant to Paragraphs VII.A. or VII.B. above, discovery will resume in this Action and the Related Actions in a reasonable manner to be approved by the Court.

### E. *Consent to Jurisdiction*

ABI, Third–Party Payor Class Representatives and Class Counsel hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement, the applicability of this Settlement Agreement or any issue related to fees and costs. ABI does not waive and specifically preserves its objection to the Court exercising jurisdiction over it in the event the Settlement Agreement is not approved by the Court, the settlement does not become final pursuant to Paragraph IV.D. or the settlement is terminated pursuant to Paragraphs VII.

### F. *Resolution of Disputes: Retention of Jurisdiction*

Any disputes between or among ABI and any Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement.

### G. *Enforcement of Settlement Agreement*

Notwithstanding Paragraph VIII.B. above, this Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

### H. *Binding Effect*

This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Third–Party Payor Class Representatives and their counsel shall be binding upon all settling Class Members.

### I. *Authorization to Enter Settlement Agreement*

Counsel for ABI represents that it is fully authorized to enter into and to execute this Settlement Agreement on behalf of ABI. Lead Counsel represents that it is fully authorized to conduct settlement negotiations with defense counsel on behalf of the Third–Party Payor Class Representatives and Class Counsel, and to enter into, and to execute, this Settlement Agreement on behalf of the Class and Class Counsel, subject to Court approval pursuant to Fed.R.Civ.P. 23(e).

### J. *No Party Is the Drafter*

None of the Settling Parties shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter hereof.

### K. *Choice of Law*

All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

### L. *Amendment; Waiver*

This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

### M. *Execution in Counterparts*

This Settlement Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

### N. *Integrated Agreement*

This Settlement Agreement, along with the above-referenced confidential letter and escrow agreement, contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the Settling Parties.

### O. *Notice*

Any and all notices intended for any party of this Settlement Agreement shall be in writing and shall be sent by fax and postage prepaid mail as follows:

To Vista, the Class or Lead Counsel:

Kevin Love, Esq.
Hanzman & Criden, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, FL 33134
(Fax: 305–357–9050)

To ABI:

Carlton Varner, Esq.
Sheppard, Mullin, Richter & Hampton, LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071
(Fax: 213–620–1398)

### P. *Construction*

This Settlement Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Settlement Agreement, for a complete resolution of the Released Claims with respect to the Releasees.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Settlement Agreement as of the date first herein above written.

### Exhibit 3

### *NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT AND FAIRNESS HEARING*

### THIS NOTICE EXPLAINS YOUR RIGHTS PLEASE READ IT CAREFULLY

**To: Third–Party Payors in the United States that, at any time from January 1, 1999 through December 31, 2002, pur-**

chased Taxol® and/or generic paclitaxel in the United States.

## I. PURPOSE OF NOTICE

The parties to the above-captioned class action ("Action"), pending before the Honorable Emmet G. Sullivan in the United States District Court for the District of Columbia ("Court"), have agreed to a Settlement, described in more detail in Section IV below. The Settlement is subject to approval by the Court.

The purpose of this Notice is to inform Third–Party Payor members of the Settlement Class (described below), for whose benefit the Action has been prosecuted, of their rights. The provisions in this Notice are qualified and subject in their entirety to the terms of the Stipulations of Settlement, copies of which are available for review in the manner provided in Section XI below. Capitalized terms used but not defined herein have the meanings given to them in the Stipulations of Settlement.

## II. THE SETTLEMENT CLASS

The "Settlement Class" or "Class," which this Court has conditionally certified for the purposes of the Settlement, consists of all Third–Party Payors in the United States which, at any time from January 1, 1999 through December 31, 2002, paid, in whole or in part, for Taxol and/or generic paclitaxel in the United States. Excluded from the Class are Bristol–Myers Squibb Company ("Bristol") and American BioScience, Inc. ("ABI") (collectively, "Defendants"), their subsidiaries, affiliates, officers and directors and government entities.

A "Third–Party Payor," for these purposes, means any entity that (a) is a party to a contract, issuer of a policy or sponsor of a plan, which contract, policy or plan provides coverage for the administration of Taxol or generic paclitaxel to natural persons, and (b) is also at risk, pursuant to such contract, policy, or plan, to pay or reimburse all or part of the costs of providing such coverage. Entities with self-funded plans that contract with a health insurance company or other entity to serve as a third-party claims administrator to administer their prescription drug benefits may qualify as Third–Party Payors. Furthermore, a self-funded health benefit plan for employees of a government entity that satisfies the definition of "Third–Party Payor" shall not be considered a "government entity."

## III. BACKGROUND TO THIS LITIGATION

Vista Healthplan, Inc., a Third–Party Payor, and Ramona Sakiestewa, an individual, filed antitrust, consumer protection and unjust enrichment claims against Defendants Bristol–Myers Squibb Co. and American BioScience, Inc., alleging that they engaged in wrongful and anti-competitive conduct by improperly extending Bristol's monopoly over the market for paclitaxel, a cancer drug sold under the brand name Taxol. The crux of the allegations is that Defendants engaged in wrongful, deceptive and illegal conduct to keep generic versions of paclitaxel off the market.

This Action was filed on June 11, 2001. Preparation for the filing of this and related actions began as early as June 1998. In June 2002, the Attorneys General of several states brought an action against Bristol on behalf of consumers ("States Action").[1] In November 2001, Oncology & Radiation Associates, P.A. brought a class

---

1. Plaintiff Ramona Sakiestewa and Class Counsel have agreed with plaintiffs' counsel in *State v. Ohio, et al. v. Bristol–Myers Squibb* *Co.*, Case No. 1:02CV01080 (EGS) (D.D.C.) ("States Action"), that any settlement in the States Action shall resolve, settle and satisfy

action against Defendants on behalf of all direct purchasers ("Directs Action").[2]

Since the filing of this Action, Vista and Class Counsel have engaged in an extensive investigation relating to the claims and underlying events alleged in the Complaint. Among other things, Class Counsel have: (1) reviewed and analyzed thousands of documents produced by Bristol, ABI and third parties; (2) engaged in legal research and analysis of a myriad of issues relating to class certification, liability, causation and damages; (3) briefed substantive motions on liability and class certification; and (4) retained and consulted with economists and other experts with respect to causation and damages allegedly sustained by the Class as a result of the wrongful conduct alleged in the Complaint. Class Counsel are therefore thoroughly familiar with issues of class certification, liability, causation and damages with respect to the claims asserted in the Complaint and defenses asserted by Bristol and ABI.

## IV. PROPOSED SETTLEMENT OF THE ACTION

After extensive negotiations among the attorneys for the parties to the Action, the parties have agreed to a Settlement of the Action ("Settlement"), subject to approval by the Court. Defendants deny all wrongdoing. The parties agree that the Stipulations of Settlement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing or the truth of

any of the claims or allegations in the Action. The terms and conditions of the Settlement are incorporated in two Stipulations of Settlement both dated May 27, 2003. The Stipulations of Settlement are on file with the Court. They are also posted on the settlement website at www.taxoltppsettlement.com and can also be reviewed as more fully described below in Section XI. The following is a summary description of the Stipulations of Settlement.

The Stipulations of Settlement provide the following:

### Settlement Fund:

Defendants have agreed to collectively pay $15,185,000 ("Settlement Fund") to settle the Action on behalf of Third–Party Payors who paid for Taxol and/or generic paclitaxel in the United States from January 1, 1999 through December 31, 2002. Bristol is paying $15,000,000 and ABI is paying $185,000. The Settlement Fund, less certain Reversion Amounts (described below), and less Court-approved amounts for: (1) attorneys' fees, costs, taxes, allocable expenses; (2) incentive awards to the named Third–Party Payor Plaintiffs in this action and a related action, not to exceed $50,000 per plaintiff; (3) costs of providing notice to the Third–Party Payor members of the Settlement Class; and (4) certain escrow agent and claims administration fees associated with the Settlement Fund ("Net Settlement Fund"), will be distributed to the Third–Party Payor members of the Settlement Class that file timely and

---

all consumer claims asserted against Bristol in this Action. Upon Final Approval, the parties have agreed and stipulated pursuant to Rule 41(a)(1) that Plaintiff Ramona Sakiestewa shall dismiss all of her claims in the Action without prejudice to her participating in the settlement reached in the States Action. The Attorneys General of the Plaintiff States, in connection with the settlement of the

States Action, are disseminating notice to consumer members of the proposed class in the States Action.

**2.** The parties in the Directs Action have settled. Class Counsel in the Directs Action, in connection with the settlement of their action, are disseminating notice to members of the proposed class in the Directs Action.

valid Proofs of Claim. The Third–Party Payor Proof of Claim accompanies this Notice, and must contain the information requested therein, in accordance with the terms described below. The amount of the Third–Party Payor Settlement Fund is subject to the Settlement Reduction and Termination Contingencies described below.

Third–Party Payors may be required, as a condition of participation in the recovery, to present evidence of their purchases of Taxol and/or generic paclitaxel during the period January 1, 1998 through January 31, 2003 (the "Claim Period"). You should, therefore, preserve invoices and other records reflecting such purchases.

The award of attorneys' fees to Class Counsel is a matter committed to the sole discretion of the Court. Class Counsel's request to the Court for reasonable attorneys' fees will not exceed one-third (33⅓%) of the difference between the Settlement Fund and certain amounts required to be repaid to Bristol pursuant to the Settlement Reduction Contingency described below and more particularly set forth in the Stipulations of Settlement ("Reversion Amounts"), plus up to twenty percent (20%) of such Reversion Amounts.

***Allocation and Distribution Plan:***

"Allocation and Distribution Plan" shall mean, subject to Court approval, the following:

(1) All Class Members' timely and valid claims shall be valued as follows: The sum of all Taxol Payments [3] multiplied by seventeen percent (17%). This amount shall be referred to as the Class Member's "Recognized Loss."

(2) To satisfy the Recognized Loss of Non–J–Code Class Members,[4] one million and five hundred and thirty thousand dollars ($1,530,000) of the Net Settlement Fund shall be set aside as the Preferential Fund.

(3) The Recognized Loss of Non–J–Code Class Members and J–Code Class Members [5] shall be paid out of the Net Settlement Fund as follows:

3. "Taxol Payments" shall mean the dollar amount of purchases of the brand-name prescription drug Taxol and generic paclitaxel (not including any dispensing fee), less any reimbursements (including co-payments), rebates or discounts, during the Class Period. For the purposes of this Settlement Agreement, a Third–Party Payor "purchases" Taxol or generic paclitaxel if they paid or reimbursed some or all of the purchase price. "Taxol Payments" shall not include any fees for the administration of Taxol or generic paclitaxel.

4. "Non–J–Code Class Members" shall mean those members of the Class that are not J–Code Class Members. Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system at the same time during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan.

5. "J–Code Class Member" shall mean any member of the Class that utilized a reimbursement or payment system for Taxol Payments during all or part of the Class Period that employed, or was based upon, a J–Code Medicare Fee Schedule (or any similar reimbursement or payment system). Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan. "J–Code Medicare Fee Schedule" shall mean a fee schedule used by or authored by the Health Care Financing Administration, Centers for Medicare & Medicaid Services, and/or Medicare that employed a Code of "J9265" to represent Taxol or generic paclitaxel and listed fees for J9265 that did not change during the Class Period.

(a) The Recognized Loss of Non–J–Code Class Members shall first be paid out of the Preferential Fund on a pro-rata basis;

(b) To the extent that the Recognized Loss of Non–J–Code Class Members is not one hundred percent (100%) satisfied from the Preferential Fund, the unsatisfied amounts of the Recognized Loss of the Non–J–Code Class Members will be paid from the Non–Preferential Fund[6] together with the Recognized Loss of J–Code Class Members on a pro-rata basis.

(c) If the Recognized Loss of Non–J–Code Class Members is one hundred percent (100%) satisfied from the Preferential Fund, and there remains money in the Preferential Fund, the remaining money will be added to the Non–Preferential Fund for payment of J–Code Class Members' Recognized Loss on a pro-rata basis.

To the extent that a Class Member used more than one reimbursement or payment system during the Class Period; and further, has valid claims as a Non–J–Code Class Member for only part of the Class Period, that Class Member's claims shall be allocated as follows: (1) the Class Member shall disclose, if applicable, the date when the Class Member switched to or from using a reimbursement or payment system based on a J–Code Medicare Fee Schedule (or any similar reimbursement or payment system), together with any other information relevant to determining the proportion of its Taxol Payments that were made under a Non–J–Code reimbursement or payment system (or similar system); (2) based on the date and other information disclosed, the Claims Administrator shall calculate the Class Member's actual breakdown of Taxol Payments or, if applicable, calculate the percentage of the Class Period that the Class Member was a Non–J–Code Class Member; and (3) the Class Member will be treated as both a J–Code Class Member and a Non–J–Code Class Member, according to its actual breakdown of Taxol Payments or percentage determined in subsection (2) above, if applicable.

### Settlement Reduction and Termination Contingencies:

Under certain circumstances, more particularly set forth in the Stipulations of Settlement, portions of the Settlement Fund may be required to be repaid to Bristol based, in part, upon Taxol and/or generic paclitaxel purchases of members of the LDR Group,[7] and/or certain other spe-

6. "Non–Preferential Fund" shall mean a fund, which the Court shall set aside to satisfy the claims of J–Code Class Members, in accordance with the Allocation and Distribution Plan, equal to the Net Settlement Fund less $1,530,000.

7. "LDR Group" shall mean the following third-party payors: Aetna U.S. Healthcare, Arkansas Blue Cross and Blue Shield, Blue Cross Blue Shield of Arizona, Blue Cross Blue Shield of Georgia, Blue Cross Blue Shield of Kansas City, Blue Cross Blue Shield of Mississippi, Blue Cross Blue Shield of Missouri, Blue Cross Blue Shield of North Carolina, Blue Cross Blue Shield of Rhode Island, Blue Cross Blue Shield of Vermont, Blue Cross of California, Blue Cross of Idaho Health Service, BlueCross BlueShield Association FEP, Capital Blue Cross, Central Benefits Mutual Insurance Company, CIGNA, Conseco Companies, Eastern States Health and Welfare Fund, Federated Mutual, Fortis Ins. Co., GE Financial Assurance, Golden Rule Ins. Co., Government Employees Hospital Assoc., Great–West Life & Annuity Ins. Co., Group Health Cooperative, Health Insurance Plan of Greater New York, Health Net, Health Partners, Inc., Health Plan of the Redwoods, HealthNow New York, Inc., Highmark, Inc., Independence Blue Cross, Louisiana Health Service Indemnity Co. (d/b/a Blue Cross/BlueShield of Louisiana), Mail Han-

cific Third–Party Payors that have chosen not to participate in the Settlement ("Settlement Reduction Contingency").

In addition, if total purchases of Taxol and/or generic paclitaxel by Third–Party Payors that timely and validly exclude themselves from the Settlement Class exceed a certain confidential sum agreed to by the parties, Defendants may terminate the Settlement in its entirety ("Settlement Termination Contingency").

## V. RIGHTS AND OBLIGATIONS OF CLASS MEMBERS

If you remain a member of this Class:

1. You will be entitled to share in the proceeds of the Settlement as described above and according to the terms of the Stipulations of Settlement if it is finally approved by the Court;

2. Lead Counsel will represent the Class on your behalf. All fees, costs and expenses of counsel for the Class will be paid only out of the Settlement Fund as determined by the Court;

3. You will not have to pay Class Counsel any additional amounts, and in no event will you have to pay any judgment, court costs, or attorneys' fees for participating in this Action. Any Class Member who does not request exclusion may, if the Class Member desires, also enter an appearance through its own counsel at its own expense. You may also seek to intervene individually and may advise the Court if, at any time, you consider that you are not being fairly and adequately represented by the representative Plaintiff and Lead Counsel;

4. Your participation in any recovery from the Settlement will depend on an order of the Court and you will be bound by the results in this lawsuit. If the Settlement is finally approved, you will be bound by the final judgment and release against Defendants as entered by the Court;

5. You may be required as a condition to participating in any recovery from the Settlement Fund, or, in the event this case goes to trial (if the Court does not finally approve the Settlement), to present evidence documenting your purchases of Taxol and/or generic paclitaxel. You should, therefore, preserve invoices and other records reflecting this information; and

6. You will be entitled to receive notice of any ruling reducing the size of the Class and also notice of, and an opportunity to be heard respecting the proposed Settlement or dismissal of the Class claims. For this reason, as well as to participate in any recovery, you are requested to notify the Taxol Claims Administrator, c/o Claim Solutions, Inc., P.O. Box 24629, West Palm Beach, FL 33416, of any corrections or changes in your name or address.

## VI. PROOF OF CLAIM

In order to share in the proceeds of the Settlement and to receive a portion of the Third–Party Payor Net Settlement Fund, Third–Party Payor Class Members are re-

---

dlers Benefit Plan, Medical Benefits Mutual Life Ins. Co., Medical Mutual of Ohio, Mid–Atlantic Medical Services Inc., Mountain States Blue Cross Blue Shield, MVP Health Plan, National Health Ins. Co., Nationwide Insurance Co. (d/b/a Calfarm Ins.), Noridian Mutual Insurance Company, Oxford Health Plan, Pacific Life Insurance Company, Pacifi-Care Health Systems, Principal Life Ins. Co., Priority Health, Inc., The Wellness Plan, Tufts Associated Health Plans, Inc., Unicare Life & Health Ins. Co., UnitedHealthcare, Verizon Communications, Wellpoint, Wisconsin Physicians Service Ins. Corp., and any other entity that is represented by the law firm of Lowey Dannenberg Bemporad & Selinger, P.C. or Rawlings & Associates as of the date this Settlement Agreement is first executed.

quired to certify and complete the enclosed Proof of Claim (providing all the requested information), and mail it to the following address:

Taxol Claims Administrator

c/o Complete Claim Solutions, Inc.

P.O. Box 24629

West Palm Beach, FL 33416

Toll Free (877) 848 –2289

YOUR PROOF OF CLAIM MUST BE received BY AUGUST 20, 2003.

## VII. ALLOCATION AND DISTRIBUTION PLAN

The Net Settlement Fund to be distributed to eligible Class Members is subject to an Allocation and Distribution Plan ("Plan") (see section IV above) that is more fully described in the Stipulations of Settlement. The Plan has been preliminarily approved by the Court.

## VIII. RELEASE AND DISCHARGE OF CLAIMS

In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, in the event that the Court gives Final Approval to this Settlement Agreement, each Releasee shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, and liabilities of any nature whatsoever, including without limitation costs, expenses, fines, penalties and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, whether or not they make a claim on or participate in the Settlement Fund,

ever had, now have or hereafter can, shall or may have, relating in any way to any conduct, act or failure to act, prior to the date of this Settlement Agreement, concerning the purchase, sale, or pricing of Taxol or generic paclitaxel, or relating to any conduct, act or failure to act, alleged in this Action including, without limitation, any such claims that have been asserted or could have been asserted based on the facts alleged in the operative complaint in this Action against the Releasees; provided however, that nothing herein shall act as a release of any claim that does not arise from or relate to the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged by Vista in this Action, including, but not limited to, claims based on the allegations asserted in In re: Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456. The claims covered by the foregoing release are referred to herein collectively as the "Released Claims." Each Releasor hereby covenants and agrees that it shall not, hereafter, seek to establish liability against any Releasee based in whole or in part on any Released Claims.

In addition, each Releasor hereby expressly waives and releases, upon this Settlement Agreement becoming final, any and all provisions, rights, benefits conferred by section 1542 of the California Civil Code, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;

and any law or any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to section 1542 of the California Civil Code. Each Releasor may hereafter dis-

cover facts other than or different from those which he, she or it knows or believes to be true with respect to the Released Claims, but each Releasor hereby expressly waives and fully, finally and forever settles and releases, upon this Settlement Agreement becoming final, the Released Claims, whether any Released Claim is known or unknown, suspected or unsuspected, contingent or non-contingent, concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, and finally and forever settles any and all Released Claims it may have under § 17200, et seq., of the California Business and Professions Code.

The Third–Party Payor Class Members intend by this Settlement Agreement to settle with and release only the Releasees, and the parties do not intend this Settlement Agreement, or any part hereof, to release or otherwise affect in any way any rights Third–Party Payor Class Members have or may have against any other party or entity whatsoever other than the Releasees. In addition, the releases set forth above shall not release any claims for product liability, breach of contract, breach of warranty, personal injury or similar claims unrelated to the subject matter of the Released Claims.

Any disputes arising under or relating to the Settlements, including, but not limited to, the releases in the Stipulations of Settlement, will be resolved in the United States District Court for the District of Columbia. The Stipulations of Settlement, including, but not limited to, the releases contained therein, shall be governed and construed in accordance with the laws of the State of New York, without regard to its choice of law or conflict of laws provisions.

## IX. YOUR RIGHT TO BE EXCLUDED FROM THE SETTLEMENT

If you fit the above description of a Class Member, you have a choice whether or not to remain a member of the Class on whose behalf this suit is being maintained. This choice will have consequences that you should understand before making your decision. If you want to remain a member of the Class, you are not required to do anything at this time. However, as explained above, to share in the proceeds of the Settlement and to receive a portion of the Third–Party Payor Net Settlement Fund, Third–Party Payor Class Members are required to complete the enclosed Proof of Claim. By remaining a Class member, you cannot assert in any other lawsuit, any claims against Defendants arising from Defendants' conduct as alleged in the Complaint.

If you want to be excluded from the Class for any reason, you must make a written request for exclusion from the Class, containing the information below, and send it to the Taxol Claims Administrator, c/o Complete Claim Solutions, Inc., P.O. Box 24629, West Palm Beach, FL 33416 by first-class mail, to be received no later than August 20, 2003. By making this election to be excluded, you will not share in any recovery to be paid to the Class as a result of the Settlement of this Action, you will not be entitled to appear at the Fairness Hearing discussed in Section X below, and you will not be bound by the Releases set forth in the Stipulations of Settlement.

Each Third–Party Payor member of the Class must make its own request for exclusion ("Notice of Exclusion"), which must be signed and contain the name, address, taxpayer identification number, telephone number and fax number of the entity that wishes to be excluded from the Class.

The request for exclusion must also include a signed certification containing the following language:

The undersigned hereby represents that he/she has authority to sign and submit this Notice of Exclusion on behalf of the above-named Third–Party Payor, and that the information provided herein is true based on company records kept in the ordinary course of business. The undersigned also certifies that he/she has not received any advice from the parties to this litigation concerning his/her or the Third–Party Payor's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, et seq., or other laws governing their obligations to any Class member. The undersigned understands that by submitting this Notice of Exclusion, the Third–Party Payor identified above will not be entitled to receive any proceeds of the Settlements described more fully in the Notice. By signing below, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

If the person who signs the Notice of Exclusion is not a duly authorized officer or director (or like employee) of the entity wishing to be excluded, then the individual must attach written evidence of the Third–Party Payor's grant of authority to the individual signing to execute the Notice of Exclusion on its behalf.

In addition, each Third–Party Payor requesting exclusion is requested to set forth the amounts paid for Taxol and/or generic paclitaxel during the period January 1, 1999 through December 31, 2002. The purpose of this information is to determine whether the Settlement Reduction and Termination Contingencies have been met. Entities not submitting the requested information may be subject to discovery via subpoena or other legal process. Any information provided by any entity requesting exclusion from the Class shall be kept confidential as provided for in the Stipulations of Settlement.

## X. THE FAIRNESS HEARING

The Court has scheduled a hearing to be held on October 22, 2003, at 11:00 a.m. in Courtroom No. 1 before the Honorable Emmet G. Sullivan, Judge of the United States District Court for the District of Columbia, at the Federal Courthouse, 333 Constitution Avenue, N.W., Washington, DC 20001, for the purpose of determining whether to finally approve the terms of the Settlement, and the motion for fees, costs and incentive awards. The time and date of the hearing may be continued or rescheduled by the Court without further notice.

If you wish to comment in support of, or in opposition to, the Settlement or motion for fees, costs and incentive awards, you may do so, but you must first file your comments and/or objections in writing, by mail, postage prepaid, to Lead Counsel for the Third–Party Payor Class and Counsel for Defendants (addresses below), received on or before September 22, 2003, giving your name and current address.

If you wish to be heard at the hearing in person or through your own attorney, you or your attorney must file a written Notice of Appearance with the Clerk of the Court for the United States District Court for the District of Columbia, at 333 Constitution Avenue, N.W., Washington, DC 20001, on or before September 22, 2003, and include a statement of the position to be asserted and the ground therefor, together with copies of any supporting papers or briefs. Your notice must include in a prominent location the name of the case (Vista Healthplan, Inc. v. Bristol–Myers

Squibb Co.), the case number (No. 1:01cv01295(EGS)), and the Judge's name (Hon. Emmet G. Sullivan). You must also send a copy of your Notice of Appearance along with all accompanying papers to Lead Counsel for the Third–Party Payor Class, and Counsel for Defendants (addresses below).

Lead Counsel for the Third–Party Payor Class:

Kevin B. Love, Esq.
Hanzman & Criden, P.A.
220 Alhambra Cir, Suite 400
Coral Gables, FL 33134

Counsel for Defendants:

Richard J. Stark, Esq.
Cravath, Swaine & Moore
Worldwide Plaza, 825 Eighth Avenue
New York, N.Y. 10019
Carlton A. Varner, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071

Except as provided herein, no person shall be entitled to contest the terms and conditions of the Settlement, or to object to attorneys' fees, costs and incentive awards, and persons who fail to object as provided herein shall be deemed to have waived and shall be foreclosed forever from raising any such objections. You need not appear at the hearing in order to object.

## XI. ADDITIONAL INFORMATION

The above is only a summary of the Settlement. A copy of the Stipulations of Settlement, which includes the releases, is on public file with the Clerk of the United States District Court for the District of Columbia, at 333 Constitution Avenue, N.W., Washington, DC 20001. In addition, Class Counsel will file their motion for attorneys' fees, costs, and incentive awards as previously described, with the Clerk of the United States District Court for the District of Columbia, at 333 Constitution Avenue, N.W., Washington, DC 20001, on or before October 15, 2003. The Stipulations of Settlement and motion for attorneys' fees will be available for inspection during normal business hours at the Office of the Clerk.

The Court preliminarily approved the proposed Settlement after a hearing held on June 3, 2003, after determining that the proposed Settlement is within the range of reasonableness. Accordingly, as described in Section X above, the Court has set a Fairness Hearing on October 22, 2003, in order to determine whether the proposed Settlement be finally approved as described above in Section X.

Any questions that you have concerning the matters contained in this Notice may be directed, in writing, to any of the attorneys listed above in Section X.

The pleadings and other records in this litigation may be examined and copied at any time during regular office hours at the Office of the Clerk of the United States District Court for the District of Columbia, at 333 Constitution Avenue, N.W., Washington, DC 20001. Alternatively, the consent decree and other documents may be viewed, at no cost, on the website for the United States District Court for the District of Columbia at www.dcd.uscourts.gov. Certain Settlement documentation is also available at *www.taxoltppsettlement.com.*

PLEASE DO NOT CONTACT THE COURT REGARDING THE SETTLEMENT.

**Exhibit 5**
**TAXOL THIRD–PARTY PAYOR PROOF OF CLAIM FORM INSTRUCTIONS**

**IMPORTANT NOTICE:** IN ORDER FOR A THIRD–PARTY PAYOR CLASS MEMBER TO RECEIVE ITS SHARE OF THE SETTLEMENT FUND, PURSUANT TO THE ALLOCATION AND DISTRIBUTION PLAN DESCRIBED IN THE NOTICE, A COMPLETED, SIGNED, AND CERTIFIED PROOF OF CLAIM MUST BE MAILED TO THE FOLLOWING ADDRESS **SO THAT IT IS RECEIVED** BY THE CLAIMS ADMINISTRATOR **NO LATER THAN AUGUST 20, 2003:**

*Taxol Claims Administrator*
*c/o Complete Claim Solutions, Inc.*
*P.O. Box 24629*
*West Palm Beach, FL 33416*
*Toll Free (877) 848-2289*

THE COMPLETED CLAIM FORM AND THE INFORMATION CONTAINED HEREIN WILL BE TREATED AS CONFIDENTIAL BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA AND WILL BE USED SOLELY FOR PURPOSES OF ADMINISTERING THIS SETTLEMENT.

Class Members include Third–Party Payors in the United States who, at any time from January 1, 1999 through December 31, 2002 ("Class Period"), purchased Taxol® and/or generic paclitaxel in the United States. Excluded from the Class are Bristol–Myers Squibb Company ("Bristol") and American BioScience, Inc. ("ABI") (collectively, "Defendants"), their subsidiaries, affiliates, officers and directors, and government entities.

A "Third–Party Payor," for these purposes, means any entity that (a) is a party to a contract, issuer of a policy or sponsor of a plan, which contract, policy or plan provides coverage for the administration of Taxol or generic paclitaxel to natural persons, and (b) is also at risk, pursuant to such contract, policy, or plan, to pay or reimburse all or part of the costs of providing such coverage. Entities with self-funded plans that contract with a health insurance company or other entity to serve as a third-party claims administrator to administer their prescription drug benefits may qualify as Third–Party Payors. Furthermore, a self-funded health benefit plan for employees of a government entity that satisfies the definition of "Third–Party Payor" shall not be considered a "government entity."

This Proof of Claim may be completed, signed and certified by the Class Member itself, or by its duly authorized agent. If a Class Member submits a Proof of Claim on its own behalf, no other Proof of Claim will be permitted on behalf of that Class Member. In the event that Proofs of Claim are filed by both a Class Member and another entity that purports to be the authorized agent of that Class Member, only the Class Member's Proof of Claim will be considered by the Claims Administrator. **THE SETTLEMENT ADMINISTRATOR IS AUTHORIZED TO REQUEST FROM PERSONS OR ENTITIES SUBMITTING A PROOF OF CLAIM, ANY DOCUMENTATION NECESSARY TO VERIFY ALL INFORMATION APPEARING IN THE PROOF OF CLAIM OR TO PREVENT CONSIDERATION OF DUPLICATE CLAIMS SUBMITTED BY OR ON BEHALF OF A CLASS MEMBER. FAILURE TO PROVIDE SUCH INFORMATION IN RESPONSE TO SUCH REQUESTS MAY CONSTITUTE GROUNDS FOR REJECTION OF THE PROOF OF CLAIM.**

If one or more Class Members have authorized you to submit a Proof of Claim on its behalf, you must provide the information requested in Section C in addition to the other information requested by this Proof of Claim. You may submit a separate Proof of Claim for each Class Member who has duly authorized you to do so, OR you may submit one aggregate Proof of Claim for all such Class Members who have authorized you to do so. If you are submitting Proofs of Claim both on your own behalf as a Class Member AND on behalf of one or more Class Member that has authorized you to submit a Proof of Claim, you should submit one Proof of Claim for yourself and another Proof of Claim for the other Class Member(s). **Do not submit a Proof of Claim on behalf of any Class Member without prior authorization from that Class Member.**

If after reviewing this Proof of Claim you need additional assistance, you may contact the Claims Administrator, at the toll-free number listed above.

## TAXOL THIRD–PARTY PAYOR PROOF OF CLAIM FORM
(Please type or print)

**SECTION A—Type of Claimant:** Please indicate whether you are claiming on your own behalf as a Class Member or as the authorized agent of one or more Class Members by placing an "X" in the appropriate space below. Only one space should be marked. **If you wish to make a claim as a Class Member AND ALSO as the authorized agent of other Class Members, please complete one Proof of Claim for your claim as a Class Member and another Proof of Claim for those Class Members for whom you are authorized to submit a claim.**

This Proof of Claim is being filed by (select one):
A. (___) The Class Member, itself, **OR**

B. The duly authorized agent of the Class Member(s) identified in Section C of this Proof of Claim, which agent's relationship with the Class Member(s) is best described, as follows:

(___) Third Party Administrator (other than a Pharmacy Benefits Manager)
(___) Pharmacy Benefits Manager
(___) Other. Explain:_____

If you marked "A" complete Sections B, D and E of this Proof of Claim, but skip Section C.
If you marked "B," complete Sections C, D and E of this Proof of Claim, but skip Section B.

**SECTION B—Claim By Class Member:** You should complete Section B if you are making a claim on your own behalf as a Class Member. If you are making a claim as the authorized agent of one or more Class Members, you should skip this section and proceed to Section C.

1. _____
Class Member's Name

2. _____
Street Address Floor/Suite

_____
City State Zip Code

3. (_____)_____ (_____)_____
Area Code Telephone Number Area Code Fax Number

4. _____
Federal Employer Identification Number (FEIN)

5. Any other names by which you have been known or other FEINs you have used since January 1, 1999:
_____
_____

6. Check the term below that best describes you or your company/entity:

(___) Individual
(___) Health Insurance Company/HMO
(___) Self–Insured Employer Health Benefit Plan
(___) Self–Insured Union Health & Welfare Fund
(___) Other. Describe:_____

7. From January 1, 1999 to December 31, 2002 ("Claim Period"), have payments for Taxol and/or generic paclitaxel been made by you or on your company's/entity's behalf by another entity, such as a health insurance company, third-party administrator (TPA) or pharmacy benefits manager (PBM)?

(___) YES (___) NO

8. If your answer to Question 7 is "YES," identify all health insurance companies, TPAs, PBMs, or other entities that have paid for Taxol and/or generic paclitaxel on your behalf:

_____

_____

_____

**SECTION C—Claim by Authorized Agent of Class Member(s):** You should complete this Section C if you are submitting this Proof of Claim as the duly authorized agent of one or more Class Members.

1. _____
 Authorized Agent's Name

2. _____
 Street Address Floor/Suite

 _____
 City State Zip Code

3. (_____) _____ (_____) _____
 Area Code Telephone Number Area Code Fax Number

4. _____
 Authorized Agent's Federal Employer Identification Number (FEIN)

5. Please list the Federal Employer Identification Number and name of every Class Member for whom you have been duly authorized to submit this Proof of Claim (attach additional sheets to this Proof of Claim as necessary). (In the alternative, you may submit the requested list of Class Member names and FEINs in an acceptable electronic format. Please contact the Claims Administrator to determine what formats are acceptable.):

_____

_____

_____

**SECTION D—Information Necessary to Calculate Class Member(s)' Claim:** As described in the Notice, each Class Member's claim is based on the amounts such Class Member paid for Taxol and/or generic paclitaxel in the United States, from January 1, 1999 through December 31, 2002. Under the Allocation and Distribution Plan, payments will be based upon what kind of reimbursement system(s) the Class Member used during the Class Period. Please fill out the subsections below that apply based on the definitions below. If you are submitting this Proof of Claim on behalf of yourself as a Class Member, provide the information requested below only for yourself. If you are submitting this Proof of Claim as the duly authorized agent for one or more Class Members other than yourself, you may either submit a separate Proof of Claim for each such Class Member, providing the information below applicable for that Class Member only; or you may submit one aggregate Proof of Claim for all Class Members identified in Section C, but you MUST provide the information requested below for each individual Class Member by either attaching additional sheets to this Proof of Claim or by submitting the information in an acceptable electronic format. Please contact the Claims Administrator to determine what electronic formats are acceptable.

**Definitions:**

**"J–Code Class Member"** shall mean any member of the Class that utilized a reimbursement or payment system for Taxol Payments during all or part of the Class Period that employed, or was based upon, a J–Code Medicare Fee Schedule (or any similar reimbursement or payment system). Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan.

**"J–Code Medicare Fee Schedule"** shall mean a fee schedule used by or authored by the Health Care Financing Administration, Centers for Medicare & Medicaid Services, and/or Medicare that employed a Code of "J9265" to represent Taxol or generic paclitaxel and listed fees for J9265 that did not change during the Class Period.

**"Non–J–Code Class Members"** shall mean those members of the Class that are not J–Code Class Members. Nothing herein prevents a Class Member who utilized more than one reimbursement or payment system at the same time during the Class Period from being considered both a J–Code Class Member and a Non–J–Code Class Member, and therefore having its claims satisfied accordingly under the Allocation and Distribution Plan.

**"Taxol Payments"** shall mean the dollar amount of purchases of the brand-name prescription drug Taxol and generic paclitaxel (not including any dispensing fee), less any reimbursements (including co-payments), rebates or discounts, during the Class Period. For the purposes of this Settlement Agreement, a Third–Party Payor "purchases" Taxol or generic paclitaxel if they paid or reimbursed some or all of the purchase price. "Taxol Payments" shall not include any fees for the administration of Taxol or generic paclitaxel.

**"Class Period"** shall mean January 1, 1999 through December 31, 2002.
**INFORMATION REQUESTED:**

(A) **IF YOU WERE A J–CODE CLASS MEMBER FOR THE ENTIRE CLASS PERIOD** (for example, you made Taxol Payments during the Class Period using a reimbursement system that employed, or was based upon, a J–Code Medicare Fee Schedule), **PLEASE COMPLETE THIS SECTION:**

TAXOL PAYMENTS FOR THE YEAR 1999 $_____
TAXOL PAYMENTS FOR THE YEAR 2000 $_____
TAXOL PAYMENTS FOR THE YEAR 2001 $_____
TAXOL PAYMENTS FOR THE YEAR 2002 $_____

TOTAL TAXOL PAYMENTS
FOR THE CLASS PERIOD $_____

(B) **IF YOU WERE A J–CODE CLASS MEMBER FOR PART OF THE CLASS PERIOD AND A NON–J–CODE CLASS MEMBER FOR PART OF THE CLASS PERIOD, BUT THESE PERIODS DID NOT OVERLAP** (for example, for the first year of the Class Period you made Taxol Payments using a reimbursement system that employed, or was based upon, a J–Code Medicare Fee Schedule, but for the last three years of the Class Period, you made Taxol Payments using a reimbursement system that did *not* employ, or was *not* based upon, a J–Code Medicare Fee Schedule) **PLEASE COMPETE THIS SECTION:**
**TIME PERIOD DURING THE CLASS PERIOD
THAT YOU WERE A J-CODE CLASS MEMBER** _____

**TAXOL PAYMENTS FOR
THIS PERIOD OF TIME** $_____

**TIME PERIOD DURING THE CLASS PERIOD
THAT YOU WERE A NON–J–CODE CLASS MEMBER**_____

PLEASE BRIEFLY EXPLAIN THE NON–J–CODE
REIMBURSEMENT SYSTEM YOU USED (you will
have to provide documentation evidencing use of the
system upon request by Lead Counsel or the Claims
Administrator) _____
 _____
 _____
 _____
 _____

**TAXOL PAYMENTS FOR**
THIS PERIOD OF TIME $_____

**(or, if you are unable to allocate your actual Taxol Payment during the Class
Period, then please provide the total amount of Taxol Payments for the entire Class
Period—you must still answer the questions above regarding time periods)**

TOTAL TAXOL PAYMENTS
FOR ENTIRE CLASS PERIOD $_____

(C) **IF YOU WERE A J–CODE CLASS MEMBER FOR PART OF THE CLASS
PERIOD AND A NON–J–CODE CLASS MEMBER FOR PART OF THE CLASS
PERIOD, AND THESE PERIODS DID OVERLAP** (for example, during the Class
Period you processed Taxol Payments using two or more reimbursement systems at
the same time, one reimbursement system that employed, or was based upon, a J–
Code Medicare Fee, and another reimbursement system that did not employ, or was
not based upon, a J–Code Medicare Fee Schedule), **PLEASE COMPETE THIS
SECTION:**

**LIST YOUR TAXOL PAYMENTS
AS A J–CODE CLASS MEMBER**

**TAXOL PAYMENTS FOR THE YEAR 1999** $_____
**TAXOL PAYMENTS FOR THE YEAR 2000** $_____
**TAXOL PAYMENTS FOR THE YEAR 2001** $_____
**TAXOL PAYMENTS FOR THE YEAR 2002** $_____

TOTAL TAXOL PAYMENTS FOR THE
CLASS PERIOD AS A J–CODE MEMBER $_____

**LIST YOUR TAXOL PAYMENTS
AS A NON–J–CODE CLASS MEMBER**

**TAXOL PAYMENTS FOR THE YEAR 1999** $_____
**TAXOL PAYMENTS FOR THE YEAR 2000** $_____
**TAXOL PAYMENTS FOR THE YEAR 2001** $_____
**TAXOL PAYMENTS FOR THE YEAR 2002** $_____

TOTAL TAXOL PAYMENTS FOR THE
CLASS PERIOD AS A NON–J–CODE MEMBER $_____

PLEASE BRIEFLY EXPLAIN THE NON–J–CODE
REIMBURSEMENT SYSTEM YOU USED (you will
have to provide documentation evidencing use of the
system upon request by Lead Counsel or the Claims
Administrator) _____
 _____
 _____
 _____
 _____

*Claimant certifies that all information is true and accurate and is based upon actual records
maintained by or available to Claimant.*

**PLEASE KEEP COMPUTER SUMMARIES OR OTHER BACKUP DOCUMENTATION
FOR THE INFORMATION THAT YOU ARE SUPPLYING. IT MAY BE REQUESTED
BY THE CLAIMS ADMINISTRATOR, COUNSEL FOR THE SETTLING PARTIES OR
THE COURT, AFTER YOU FILE YOUR PROOF OF CLAIM.**

**_SECTION E—Jurisdiction of the Court and Certification:_** By signing below, I hereby swear or affirm, on my own behalf and/or on behalf of the "Authorized Agent" identified in Section C, that: (1) I have been given authority to submit this Proof of Claim either: (a) by the Class Member on its behalf; or (b) if this Proof of Claim is submitted by an "Authorized Agent" identified in Section C, by the Authorized Agent on its behalf, and such Authorized Agent, in turn, has been given the authority to submit this Proof of Claim by each Class Member identified in this Proof of Claim and in any attachments to this Proof of Claim, and to receive on behalf of each such Class Member any and all amounts that may be allocated from the Net Settlement Fund to such Class Member; (2) the information contained in this Proof of Claim and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (3) I, the Authorized Agent (if any), and each Class Member on whose behalf this Proof of Claim is submitted, hereby submit to the jurisdiction of the United States District Court for the District of Columbia ("Court") for all purposes associated with this Proof of Claim, including resolution of disputes relating to this Proof of Claim; (4) in the event that amounts from the Net Settlement Fund are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I and/or my employer will hold the Class, counsel for the Class, Defendants, Counsel for Defendants, and the Claims Administrator harmless with respect to any claims made by said Class Member. I acknowledge that any false information or representations contained herein may subject the Authorized Agent and me to sanctions, including the possibility of criminal prosecution. I hereby agree, on behalf of myself and the Authorized Agent, to supplement this Proof of Claim by furnishing documentary backup for the information provided herein, upon request of the Claims Administrator, Counsel for the Settling Parties, or the Court.

Name:_____ Position:_____
 [Print or type]

Signature:_____ Date:_____

The following information is to be provided by the Individual who signs and certifies this Proof of Claim:

I am filing this Proof of Claim as the authorized employee of the following Class Member or Authorized Agent for Class Member:

1. _____
 Name of Individual's Employer

2. _____
 Business Address

 _____
 City State Zip Code

3. ( ___ ) _____ ( ___ ) _____
 Area Code Telephone Number Area Code Fax Number
 **PROOF OF CLAIM FORM MUST BE NOTARIZED BELOW**

COUNTY OF _____ )
STATE OF _____ )
 I, the undersigned, a Notary Public in and for said county and state, hereby certify that _____, whose name is signed to the foregoing claim form oath and certification, and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing claim form oath and certification, he/she executed the same voluntarily and under oath.

Given under my hand and official seal this _____ day of _____, 2003.
My commission expires: _____ _____
 Notary Public